# CHARLESTON

MORRISEY *et al.* v. WILLIAMS, RECEIVER,

and

WILLIAMS, RECEIVER, v. FIDELITY BANKING AND TRUST CO.
*et al.*

Submitted June 17, 1914.   Decided June 30, 1914.

1. CORPORATIONS—*Subscriptions of Stock—Purchase of Stock—Liability of Stockholders.*

   The general rule that a subscription or purchase of the stock of a corporation will not be rescinded even for fraud when no action to that end is taken until after the declared insolvency of the corporation by a receivership, is not without qualification.   If proper equities of creditors will not be affected, the rule should not apply. And particularly where no debts of the corporation have accrued subsequent to the subscription or purchase, rescission may be had. (p. 638).

2. SAME—*Sale of Stock—Rescission—Insolvency of Corporation.*

   A fraudulent sale by an insolvent bank of shares of its capital stock may be rescinded by the purchaser though action in that behalf is not taken until after a receiver for the bank has been appointed, where no great length of time elapsed between the sale and the receivership, the purchaser did not actively participate in the management of the bank, no want of diligence on the part of the purchaser in discovering the fraud or in taking steps to rescind appears, and no considerable amount of indebtedness, remaining unpaid, accrued against the bank subsequent to the sale. (p. 638).

Appeal from Circuit Court, Mercer County.

Bill by A. Morrisey and others against C. L. Williams, Receiver, and by C. L. Williams, Receiver, against the Fidelity Banking & Trust Company and others.   The cases were consolidated, and from the decree, Morrisey and others appeal.

*Reversed, and Decree Entered.*

*Ross & Kahle,* for appellants.

*Sanders & Crockett,* for appellees.

ROBINSON, JUDGE:

The appeal brings up for review decrees in consolidated causes, styled as *Morrisey et al.* v. *Williams, Receiver,* and *Williams, Receiver,* v. *Fidelity Banking and Trust Co. et al.* In the first named cause Morrisey sought, on the ground of fraud, a rescission of a sale of bank stock, which sale was made to him by an officer of the bank on its behalf only a short time before the bank as insolvent went into the hands of a receiver. The decree therein denies him relief. The object of the other cause was to enforce for the benefit of the creditors of the bank the so-called double liability of the stockholders. In it the receiver has decree against Morrisey for an amount equal to that of the shares of stock held by him under the sale that he sought to have rescinded in the first named suit. Morrisey complains of the decrees against him. If the decree in the first named cause must be reversed, the decree in the other cause necessarily falls. Clearly if the sale of the stock is rescinded, liability as a holder of the stock can not be enforced against Morrisey.

While we have great respect for the judgment of the learned chancellor who decided the causes, we are of opinion that the sale of the stock to Morrisey was fraudulent in equity and that under the facts and circumstances appearing he may have the same rescinded. We are confirmed in this view by the same chancellor's finding and decree in a cause presenting the same issues upon virtually the same facts and calling for the application of the same law, as in the Morrisey case. The cause is *Scott* v. *Williams, Receiver,* also here on appeal, and to be decided herewith by separate memorandum. Scott's case, demanding on the ground of fraud a rescision of a sale to him of stock in the insolvent bank, is the same as Morrisey's. It is no stronger. Indeed the one is nearly identical with the other so that no practical distinction can be made between them. Yet in the Scott case, decided some months later than the other, the chancellor decreed a rescission. It therefore appears that upon maturer consideration the chancellor most commendably confessed his error in the former decree in the Morrisey case. One of the

noblest traits of a judge is willingness to change his views when convinced that they are wrong.

It will serve no practical purpose to narrate the evidence in relation to the sale of the stock to Morrisey. It suffices to say that the facts and circumstances point clearly to the conclusion that the bank officer, by representations which he knew or at least was chargeable with knowing were false, palmed off on Morrisey stock in the insolvent bank, held by it as collateral to a past due note, through leading him to believe it was new stock, and took in lieu of the same from Morrisey a good and valuable certificate of deposit in a foreign bank. In less than a month thereafter the bank was forced to close its doors. The certificate of deposit is still in the hands of the receiver. In equity and good conscience it must be returned to Morrisey.

It is submitted for the receiver that a subscription or purchase of stock in a corporation can not be rescinded even for fraud when no action in that behalf is taken until after a declared insolvency of the corporation by a receivership, the rights of creditors then having stepped in as entitled to superior consideration. In many cases this is true. It is not true in this case. The rule rests on the rights of creditors. When the reason for the rule does not arise, the rule is of course not applicable.

From the record it does not appear that the rights of creditors intervened between the time Morrisey took over the stock and the time the receiver took charge, a period, as we have said, of less than a month. It does not appear that liabilities of the bank accrued within this period for which the stockholders would be liable. We can not see that the liabilities increased one cent, or that a single new creditor came in, while the stock was in Morrisey's hands under the fraudulent sale. Liabilities of the bank accruing prior to the purchase by Morrisey of the stock did not attach against him as a stockholder. Our law plainly says that the stockholders are only liable for the liabilities of the bank "accruing while they are such stockholders." Const. Art. 11, sec. 6; Code 1913, ch. 47, sec. 78a III.; *Dunn* v. *Bank*, 74 W. Va. 594, decided at this term. Stockholders in banks by the

issuance of new stock to them, or by the transfer of the stock of others to them, do not assume the so-called double liability as to debts of the bank existing prior to the issuance or transfer of the stock. They are liable only for debts accruing subsequent to their acquirement of the stock. A transferer of bank stock remains liable for debts of the bank that accrued while he held the stock. This is the plain import of our law. Similar provisions in other states are so understood. Laws of Illinois, 1889, page 59; *Shuey* v. *Holmes,* 21 Wash. 223. Surely it would not be equity to allow the receiver to apply Morrisey's money to the payment of creditors of the bank to whom the law does not bind him. Plainly Morrisey's right to a rescission is superior to the rights of creditors to whom debts were due from the bank before he became a stockholder. They lent no credit on the strength of his having stock, either theoretically or actually. They are in no worse position than if he had never purchased the stock. A rescission can do them no harm.

While the general principle relied on by the receiver is usually applicable when a considerable length of time lapsed between the purchase of the stock and the demand for rescission, yet sound authorities refuse to apply it under such circumstances as are disclosed in Morrisey's case. We shall not cite the cases. The books readily disclose them. From a leading text the following is pertinent: "In England, and in some of the states in this country, it has been held that a subscription cannot be repudiated on the ground of fraud, for the first time, after the corporation has become insolvent, and has made an assignment or gone into the hands of a receiver or an assignee in bankruptcy, even though the fraud may not have been discovered before insolvency, and though there may have been no laches in discovering it. According to the better opinion, however, this doctrine cannot be sustained without qualification. Surely, the equity of a person who has been induced to subscribe for stock in a corporation, without negligence on his part, by the deceit of its officers or agents, and who has not been guilty of negligence, either in failing to discover the fraud, or in repudiating his subscription after its discovery, cannot be said to be inferior

to the equity of persons dealing with the corporation and becoming its creditors, and he should not be denied the right to set up the fraud as a defense in an action or other proceeding to enforce his subscription, merely because the corporation has become insolvent, and it is sought to enforce the subscription for the benefit of its creditors. The view that he has such right is supported by well-considered cases, both in England and in this country. This rule should undoubtedly be applied where no debts have been contracted by the corporation since the date of the subscription." 2 Clark and Marshall on Private Corporations, sec. 473g.

A complete examination of the authorities leads us to believe that the United States Circuit Court of Appeals of the Eighth Circuit, in *Newton National Bank* v. *Newbegin*, 74 Fed. 135, fairly states the law, wherein it is said: "If a considerable period of time has elapsed since the subscription was made; if the subscriber has actively participated in the management of the affairs of the corporation; if there has been any want of diligence on the part of the stockholder, either in discovering the alleged fraud, or in taking steps to rescind when the fraud was discovered; and, above all, if any considerable amount of corporate indebtedness has been created since the subscription was made, which is outstanding and unpaid,—in all these cases the right to rescind should be denied, where the attempt is not made until the corporation becomes insolvent. But if none of these conditions exist, and the proof of the alleged fraud is clear, we think that a stockholder should be permitted to rescind his subscription as well after as before the company ceases to be a going concern."

Now, without entering into details, we may say that none of the conditions mentioned above as warranting a denial of rescission, appear in Morrisey's case. No considerable period of time elapsed; Morrisey did not actively participate in the management of the affairs of the bank; there was no want of diligence on his part in discovering the fraud or in taking steps to rescind; and no considerable amount of the bank's indebtedness accrued while he held the stock. The mere presence of Morrisey at a meeting in response to a hurried call of the stockholders when the bank's failing condition

first became generally known, can not bind him as participating in the management of the affairs of the bank. He would naturally go there to see how things stood. While there he in no way committed himself to keep the stock—in no way did that which would condone the fraud practiced on him. Indeed it is a reasonable inference that by the report of the president made at this meeting, Morrisey first realized that he had been deceived by the sale of the stock to him. Only a short time before that in the negotiation of the sale he had been assured by officers of the bank that its condition was flourishing. Nothing appears that would reasonably charge him with notice to the contrary. In two days after the meeting the commissioner of banking closed the bank. Morrisey obtained leave to sue the receiver for rescission, at the earliest opportunity. He brought his suit at the first term of court available. What lack of diligence in taking steps to rescind? None. As to the last named condition—the accrual of indebtedness against the bank—we have already spoken. We have said that there is no proof of the accrual of indebtedness. If any did accrue, the inferences from the proof of what business the bank did during the time that Morrisey held the stock point to the fact that the same was inconsiderable.

What we have said sufficiently disposes of the questions determining the appeal. The decree in the first named cause will be reversed and a decree rescinding the sale of the bank stock will be here entered. The decree in the other cause will also be reversed in so far as it adjudges liability on the score of this particular stock.

*Reversed, and Decree Entered.*