# CHARLESTON.

BRUCE A. HEATER v. HOMER J. LLOYD *et al.*

Submitted February 3, 1920.   Decided February 17, 1920.

1.  APPEAL AND ERROR—*Sustaining Demurrer Without Dismissing Bill May be Reviewed on Certificate but Dismissal of Parties from Suit only on Appeal.*

    The correctness of the ruling of a trial court sustaining a demurrer to a bill, but not dismissing it, may properly be

considered by this court upon certificate, as authorized by section 1, ch. 135, Code; but the court will not consider that part of the order dismissing from the suit one or more, but not all, of the parties defendant, such action being final as to them, and, if erroneous, correctable only upon appeal. (p. 573).

2. Equity—*Right to Rescind Purchase of Stock for Fraud Notwithstanding Concurrent Remedy at Law.*

Where a person has by fraud been induced to buy from another stock in a bank which shortly thereafter is adjudged insolvent, he may institute and maintain a suit in equity for rescission of the transaction and repayment of the consideration paid therefor, notwithstanding the existence of a concurrent remedy at law. (p. 574).

3. Same—*In Suit for Total Rescission of Purchase of Stock Induced by Fraud the Court With Acquiescence of the Parties May Decree a Partial Rescission.*

Where the worthless bank stock thus acquired by plaintiff was only part of the consideration involved in the transaction, and the bill, read and considered as a whole, shows that a total rescission of the transaction is sought, but alleges plaintiff's willingness in lieu thereof to rescind only in so far as the stock is concerned, the court, with the acquiescence of the defendant, may enter a decree for such partial rescission instead of one restoring the status quo. (p. 575).

4. Same—*Bill Seeking Rescission of Purchase of Bank Stock and to Enjoin Bank's Receiver from Assessing Statutory Liability is Not Multifarious.*

Nor will such bill be held multifarious because it seeks, not only a rescission of the transaction involving the bank stock, but also an injunction restraining the receiver of the insolvent bank from assessing the statutory personal liability against plaintiff as owner of the stock, and from collecting the amount so assessed. (p. 576).

5. Injunction—*Scope of Injunction Against Receiver's Assessment of Statutory Personal Liability Against Owner of Bank Stock.*

But in such a case the court should limit the scope of its injunction, leaving the receiver free to institute a general creditors' suit, and to assess against the stock its relative proportion of the liabilities, if any, incurred by the bank during the period of plaintiff's ownership of the stock, and restraining the receiver only from collecting such assessment from plaintiff until the court shall have determined whether

any liabilities accrued against the bank during such period, and if so, whether plaintiff or his fraudulent transferor is liable therefor. (p. 577).

6. BANKS AND BANKING—*Stockholder's Statutory Double Liability Applies Only to Liabilities Incurred by Bank During Stockholder's Ownership.*

A stockholder in a bank is subject to the statutory double liability only with respect to liabilities incurred by the bank during the period of his ownership of the stock. (p. 576).

Certified from Circuit Court, Braxton County.

Bill by Bruce A. Heater against Homer J. Lloyd, the People's Bank of Burnsville, and J. I. Bender, its receiver. Demurrer to bill sustained on each ground assigned, and bill dismissed as to defendant Bank and its receiver, with leave to plaintiff to amend, and the correctness of such ruling certified.

*Reversed; demurrer overruled.*

*Hall Bros.*, for plaintiff.

*James E. Cutlip, Haymond & Fox*, and *Alex Dulin*, for defendants.

LYNCH, JUDGE:

The bill in this suit has for one of its two chief purposes the rescission of an executed agreement of sale, consummated June 18, 1919, whereby plaintiff transferred to defendant a certificate for the shares of stock owned by him in the Delta Coal Company, a corporation, and representing a one-third interest therein, in consideration of the transfer to him by defendant, at par value, or an aggregate valuation of $500, of a certificate calling for five shares of the capital stock of the People's Bank of Burnsville, a state banking institution of which defendant is stockholder and director, the payment of a sum in cash, and the assumption by Lloyd of certain liabilities incurred by and chargeable to plaintiff as part of the unpaid purchase price of the coal company stock. The other object is to obtain an injunction to prohibit the assessment of the statutory personal liability against the bank stock, the certificate of which plaintiff has held as owner since the transfer, and the collection of the amount so assessed, the defendant bank in the meantime having become utterly insolvent, and defendant Bender the receiver of its assets for the purposes of

liquidation. The bill joins as defendants Lloyd, the insolvent bank and J. I. Bender, receiver.

The right to maintain the suit for either purpose against any of the defendants for the attainment of these ends is based upon the alleged fraudulent representations of Lloyd regarding the actual market value of the five shares of bank stock at the time of the assignment of the certificate, the date thereof preceding by one month only the official ascertainment of the insolvency of that institution and the appointment of Bender receiver of its assets. To the bill each of the defendants demurred and assigned as grounds of the challenge want of equitable jurisdiction to pronounce the decree prayed for; the availability of an adequate remedy at law for the deception, if any, practiced by Lloyd; and multifariousness of the bill. The demurrer thus interposed the court sustained on each ground assigned, dismissed the bill as to the bank and the receiver, gave leave to plaintiff to amend, and certified here for our opinion the correctness of that ruling.

Viewed in the light of the purposes of the final clause of section 1, chapter 135, Code, and the decisions of this court relative to the right to certify questions finally determined and adjudicated in the trial court, as was done by the order dismissing and discharging the defendants bank and Bender from the suit, manifestly this court cannot consider, discuss or decide anything affecting them otherwise than by writ of error or appeal. The effect of the provisions of that statute is to circumscribe, restrict and limit the right of this court to entertain and decide only questions immediately arising in the preliminary stages of a controversy, that is, mere interlocutory orders, not those fully and completely terminating the action or suit by final judgment or decree. To obtain relief from an erroneous judgment or decree the party aggrieved must resort to the usual writs provided by law for that purpose, and not to those provided for a special purpose. It is true this court has held in *Gulland* v. *Gulland*, 81 W. Va. 487, that a decree sustaining a demurrer to part of a bill and dismissing it as to such part may be certified to this court for review, and if found to be erroneous, the bill will be reinstated in so far as it was dismissed. But the court in this case dismissed two of the

parties, and not part only of the bill, as in *Gulland* v. *Gulland*. The sufficiency of a pleading dismissed in part and the propriety of the dismissal of one or more, but not all, of the parties are two totally different things. The bill was found to be deficient upon demurrer, but no part of it was dismissed, and the questions raised respecting it properly are before this court for consideration upon the certificate.

Since the defendant Lloyd raised the same questions upon his demurrer as did the parties dismissed, it is necessary for us to discuss and indirectly pass upon questions affecting the bank and receiver; but we cannot reinstate them as parties, if they were dismissed improperly, otherwise than on appeal. As to them the decree is final, and appealable, and to correct any error in that order plaintiff must resort to the usual procedure provided for that purpose.

With respect to the jurisdiction of equity to entertain a suit for rescission we entertain no doubt. A reading together of the allegations of the bill and its prayer discloses plaintiff's willingness and offer to accept either a total or partial rescission of the contract whereby he acquired through the fraudulent representations of defendant the ownership of the five shares of bank stock. Although one part of the prayer is that he recover from defendant the sum of $500, the value at which he accepted the stock in the exchange consummated by the contract, the preceding clause is 'that the transaction aforesaid by which he purchased the said five shares of stock * * * may be rescinded, cancelled and annulled;" apparently referring to the entire transaction. That this was the intention is clear from the recitals of the bill. It states the offer made, and now repeated to rescind the whole transaction by repaying to Lloyd the cash payment heretofore referred to, by relieving him from the obligations assumed as aforesaid, and by surrendering to him the said shares of bank stock, upon return of the coal stock delivered to Lloyd, and the repayment by him of $500, the valuation at which the bank stock entered into the consideration. Upon Lloyd's refusal to rescind in toto, because he theretofore had sold to another the shares of coal stock so purchased, plaintiff offered, and in his bill consents, to accept in lieu thereof an equal amount of other stock of the same coal company, since

acquired by Lloyd from another source, or to rescind in so far
as Lloyd is now able to do so by returning the five shares of
bank stock upon the repayment of the $500 paid by plaintiff for
it. These offers defendant declined and still refuses to accept
by way of adjusting the matters in dispute.

Treating the bill as one for rescission in toto, or to such an
extent as defendant is able to make restitution, including the
return of the $500 for the bank stock, there can be no doubt
of the jurisdiction of equity to grant the relief asked, even
though plaintiff may have an action at law to recover the
money actually paid for the stock. Plaintiff seeks for some-
thing more than a mere money judgment. He desires to be
relieved of the burden incident to the possession and conse-
quential liability due to ownership of the shares of stock which
defendant fraudulently induced him to accept. The remedy
which the law may afford is necessarily incomplete and inade-
quate because of the lack of power to effect a rescission by a
direct adjudication thereof and thereby unburden him of these
liabilities. *Bruner & McCoach* v. *Miller,* 59 W. Va. 36. As said
in that case at page 45: "From the peculiar nature of the juris-
diction for the purpose of rescission, this court has always
recognized the right of a party who is the victim of a fraud
or mistake to come into equity for relief, notwithstanding the
existence of concurrent jurisdiction in the law courts." And in
*Morrisey* v. *Williams,* 74 W. Va. 636, relief very similar to
that sought here was granted. See also 2 Black on Rescission
and Cancellation, § 646; *Bosley* v. *National Machine Co.,* 123
N. Y. 550. The varied forms of relief by rescission which the
court under plaintiff's bill might render, and the protection
sought against the bank and its representative, require for full
effectuation the broader and more elastic machinery of a court
of equity rather than the more rigid proceedings at law. *Warren*
v. *Boggs,* 83 W. Va. 89, pt. 7, Syl.

It is unnecessary to discuss the extent of the jurisdiction of
a court of equity to grant partial rescission of such a transac-
tion, where that alone is sought, or to consider the related ques-
tion whether that part of the transaction, whereby plaintiff
was induced to accept at a valuation of $500 bank stock that
was practically worthless, was divisible and separable from

the other portions of the transfer so as to warrant partial rescission. As has already been said, reading together all the allegations of the bill, the tenders therein made in order to restore the status quo, and the prayer for general relief, we treat the bill as one for entire rescission of the transaction. But since plaintiff in his pleading has expressed willingness to accept less than total rescission, that is, payment by defendant of the $500 agreed valuation at which plaintiff accepted the stock, defendant likewise may be willing to pursue that course rather than be restored to the status quo, in which case it may be proper for the court to enter a decree for such sum, upon return of the bank stock to defendant, and permit the remainder of the transaction to stand. *Silliman* v. *Gillespie,* 48 W. Va. 374.

Finally the bill was assailed successfully on the ground of multifariousness, in that it included in the same pleading two distinct causes of action, namely, a suit to rescind the transaction between plaintiff and defendant and one to restrain the receiver of the insolvent bank from levying any assessment upon or collecting any amount from him as a stockholder of said bank or as owner of the five shares of its stock. It is certainly true, as we have held recently (*Bean* v. *County Court,* 101 S. E. 254), that "a bill setting up two separate and distinct causes of action in no wise related to each other, calling for relief different in its nature, character and extent, both of equitable cognizance, the proof in support of which would be separate and distinct and in no wise related, and the defense of which calls for setting up matters in no wise related, resulting in a confusion of the issues involved and the proof offered in support thereof, if attacked in limine, will be held multifarious." But the rule against multifariousness is generally regarded as one of convenience, and where the matters contained in the bill are not wholly separate and distinct, but are intimately correlated and relevant to the relief sought, and it is possible to litigate and dispose of them in one suit without injustice to any one or confusion of the issues involved, the objection should be disregarded. *Coal & Coke Co.* v. *O'Neal,* 82 W. Va. 186. As incidental to a rescission of the transfer to him of the stock of the insolvent bank, plaintiff seeks to restrain the imposition

upon him of any burdens which subsequent proceedings in the case may show that he should be free from. The issues are closely connected in subject matter and in the substance of the relief sought. The bill expressly alleges "that there was very little, if any, business transacted' by said bank after the purchase by him (plaintiff) of the shares of stock aforesaid," and that "no losses were sustained after he purchased said stock." These allegations the demurrer admits to be true, and if so, plaintiff is wholly exempt from the imposition of any burden chargeable to the owner of bank stock, for such a stockholder is subject to the statutory double liability only with respect to liabilities incurred by the bank during the period of his ownership of the stock. Section 78a (3), ch. 54. Code; *Dunn* v. *Bank of Union,* 74 W. Va. 594; *Morrisey* v. *Williams,* 74 W. Va. 636. Such is the express language of the statute, and such is the construction that has been placed upon it. The allegations of the bill, therefore, disclose a situation exonerating plaintiff from such liability, if the proof sustains the allegations.

Whether, if the facts developed upon the hearing should disclose liabilities incurred by the bank during the period of his ownership of the stock, he or his fraudulent transferor would be liable therefor to the receiver, is a question not arising under the pleading, and as to it we express no opinion, except to say that the only two authorities which we have discovered involving the point, and they are recent cases, agree that the bank has a direct action against the holder of record, although he became such holder by reason of a fraudulent transfer. *Brooks* v. *Austin* (Tex. Civ. App.), 206 S. W. 723; *Bundy* v. *Wilson* (Col.), 180 Pac. 740. As to whether we would be disposed to follow these decisions we express no opinion.

The injunction sought by the bill to restrain the receiver from the imposition or collection of any assessment against plaintiff as stockholder of said bank would perhaps have been proper under the allegations of the bill that no liability had accrued against the bank during the period of plaintiff's ownership of the stock. But since the proof may show the facts to be otherwise, it will be more in accordance with due regard for the rights and duties of the receiver to restrain the latter only from collecting any assessment from plaintiff until

the question is settled whether plaintiff or defendant Lloyd is responsible for the liability, if any, incurred by the bank during that period, leaving the receiver free to institute a general creditors' suit and to assess against the five shares of stock their relative proportion of that indebtedness.   Such a qualified injunction will accord to the receiver the freedom of action which his position of trust requires in protecting the rights of the creditors whom he represents, and at the same time will safeguard plaintiff by relieving him from collection of any assessment that may be levied against the shares which he holds, until the question whether plaintiff or his fraudulent transferor is liable therefor can be determined in this suit.   However, since the receiver is no longer a party to the suit, no injunction of any kind properly may issue against him at this time.

For these reasons we disapprove the rulings of the trial court in so far as they sustain the demurrer to the bill, but take no action respecting the reinstatement of the parties dismissed from the suit.

*Reversed; demurrer overruled.*