# CHARLESTON.

F. D. STALNAKER, RECEIVER, *v.* O. W. GUM *et al.*

Submitted October 19, 1920. Decided October 26, 1920.

1. CORPORATIONS—*Subscriber, Promptly Repudiating Subscription
   and Attempting to Cancel it for Fraud, Not Liable to Assess-
   ment After Insolvency.*

   One who is induced by false and fraudulent representations
   to subscribe to the stock of a corporation, and promptly repudi-
   ates such subscription, and attempts to have it cancelled, upon
   the discovery of the fraud in its procurement, cannot be held
   liable, after the insolvency of such corporation, for an assess-
   ment against him for the purpose of raising a fund to pay its
   debts.   (p. 288).

2. SAME—*Rule Requiring Prompt Repudiation of a Subscription
   for Fraud Held Not to Apply.*

   The general rule that one, who is induced by false and
   fraudulent representations to subscribe to the stock of a cor-
   poration, will not be allowed to repudiate such subscription,
   unless he acts promptly upon a discovery of the fraud, is for
   the benefit of creditors who may have dealt with the corpora-
   tion upon the faith of such subscription, and where the assets
   of the corporation, including unquestioned subscriptions to its
   capital stock, are ample to discharge all of the debts of the
   corporation, the reason for the application of the rule no longer
   exists.   (p. 288).

3. SAME—*One Induced to Subscribe by Fraud Held Not Required
   to Pay Assessments by Receiver.*

   Where, in order to create a fund for the payment of debts of
   an insolvent corporation, it is necessary to make an assessment

   87 W. Va.

upon the unpaid subscriptions to the capital stock, but not to the full extent thereof, and one of such subscribers has been induced to make his subscription by false and fraudulent representations, and attempts to defeat the assessment because thereof, the controversy between him and the receiver attempting to collect the subscription becomes in effect one between such subscriber and the other stockholders, and not between him and the creditors, and unless some peculiar equities are shown in favor of the other stockholders, such as that they made their subscriptions upon the faith of the subscription made by him, he will not be required to pay such assessment if grounds exist which would justify the cancellation of his subscription in a suit between him and the corporation. (p. 291).

(WILLIAMS, PRESIDENT, absent)

Appeal from Circuit Court, Braxton County.

Consolidated suits by F. D. Stalnaker, receiver of the Marell Chemical Company against O. W. Gum and others, and A. C. Herold and others, and another. From the decree defendants Herold and others appeal.

*Reversed and remanded.*

*Hall Bros.,* for appellant A. C. Herold.

*Morton & Wooddell,* for appellants A. B. Jackson, L. French Herold, and George R. Morton.

*John Ross, Jr.,* for appellee John F. Keough.

*Hines & Kelly,* for appellee Stalnaker.

RITZ, JUDGE:

The Marell Chemical Company was incorporated in the fall of 1913 for the purpose of conducting manufacturing operations in Braxton county. The promoters of this concern solicited and secured a number of subscriptions to the stock of the company during that fall and the following winter. The company acquired some property and began to conduct its operation, but in the fall of 1914 it became embarrassed, and in a suit by some of its creditors to enforce liens against its property a receiver was appointed by the circuit court of Braxton county to take charge of its assets and administer the same under the direction of that court. This receiver converted the company's assets into money, and distributed the same to the

creditors, in accordance with the orders of the circuit court of Braxton county made from time to time. After this was done it was found that there remained unpaid something over eleven thousand dollars of debts, and that there was some thirty-five or forty thousand dollars of unpaid subscriptions to the capital stock. The receiver then brought this suit for the purpose of collecting from the subscribers to the stock an assessment sufficient to raise a fund to pay off the remaining debts. The appellants had made subscriptions to the said capital stock, and had paid nothing on account thereof. They were, therefore, made defendants to the bill, and relief asked against them.

The appellant A. C. Herold filed his answer in which he denied that he was a stockholder of said company. He admitted having signed the subscription for two hundred and fifty shares of said stock of the par value of twenty-five hundred dollars, but averred that he signed this subscription at the solicitation of S. M. Nease; that at the time said Nease solicited said subscription from him, to-wit, on the 20th day of June, 1914, he represented that the Marell Chemical Company had purchased from the West Branch Lumber Company a tract of over four thousand acres of land, for the sum of twenty thousand dollars, upon which a large cash payment had been made; that it had purchased a factory site at the price of four thousand dollars, a large part of which had been paid; that it had purchased a large amount of machinery and other materials; and that it had purchased another tract of land, with which appellant was acquainted, from W. D. Huff, and others, known as the Brockerhoff land, at the price of one hundred and twenty-five thousand dollars, and that either twenty or twenty-five thousand dollars of the purchase money had been paid; and that certain parties, with whom the appellant was acquainted, had made substantial subscriptions to said stock; that when he signed said subscription and delivered it to the said Nease, it was with the distinct understanding and agreement with said Nease that the same should not be delivered to the company until appellant had had an opportunity to investigate the representations made by the said Nease, and notified the said Nease that he was satisfied to become a stockholder; that he did investigate these rep-

resentations and found them all false; that while the company had bought a tract of land from the West Branch Lumber Company at the price of twenty thousand dollars, it had made no cash payment whatever thereon, but had given its check for two thousand dollars for the cash payment, which had gone to protest; that it had not purchased the Brockerhoff tract of land for one hundred and twenty-five thousand dollars, or for any other sum, but had simply had an option to purchase this tract of land at that price, which had expired; that the substantial parties known to the said A. C. Herold, who it was represented had subscribed to the capital stock of said company, had not subscribed thereto; that upon discovering the falsity of Nease's representations he notified said Nease thereof, and demanded that he return the subscription to him, as he did not care, under the circumstances, to become a stockholder of the company; that said Nease promised to return the same, but did not do so; that he called upon him on several occasions for this purpose, and always received his promise to return the subscription, and upon Nease's failure to return this subscription he called upon the treasurer of the company, Thomas F. Martin, and that said Martin promised him that the same would be returned, but before he secured its return and cancellation the receiver had been appointed, and had taken charge of the company's affairs. Upon this state of facts the said A. C. Herold claimed that plaintiff was not entitled to recover, and by way of affirmative relief asked that said subscription be cancelled and delivered up to him.

When the cause was referred to a commissioner the evidence of Herold was taken in support of his answer, as well as the evidence of Nease and Martin in regard thereto. Herold testified to the state of facts shown above. Nease admitted that as the agent of the company he solicited this subscription, and that the same was taken by him with the understanding set up by Herold, but that not having heard from Herold in what he considered a reasonable time he turned the subscription in to the officers of the company. This is all he says about the transaction. Martin also testifies, but does not refer to any dealings with the appellant Herold. so that it may be said that

Herold's contention is admitted by the company's officers, and that is that by the grossest kind of fraud the subscription was procured from him and retained after being so procured, and that he, immediately upon discovering the fraud, repudiated the subscription, and made repeated efforts to have it returned and cancelled, and that the officers of the company made repeated promises that this would be done. There is an attempt to show that Herold was elected treasurer of the company in July, 1914, but this attempt was entirely abortive. It is true the directors elected Herold to this office, but immediately upon discovering this fact he repudiated the action, and declined to accept the office, and another was elected thereto. Herold further testifies that while assessments were made against other stockholders, and demands sent to them that they pay them, no assessments were ever made against him, or at least no demand was ever made upon him that he pay any such assessment.

The other three appellants did not file answers until after the commissioner had made his report ascertaining that they were stockholders and liable to be assessed for the purpose of raising a fund for the payment of debts, and determining the amount of the assessment against each. Upon the coming in of this report, and before any decree was entered thereon, they tendered their answers and asked leave to file the same, which leave was given, and the answers accordingly filed. In these answers it is set up that in the month of June, 1914, the same man Nease who procured the subscription from A. C. Herold solicited subscriptions from each of the other three appellants. These answers aver that he made to them practically the same representations in regard to the assets and business of the company that he made to A. C. Herold, and that they signed the subscriptions filed with the bill, but that the same were deposited with the Lanes Bottom Bank, to be held by that bank until they made an investigation of the company and its affairs, and determined whether or not they desired to become stockholders of it, and if after such investigation they did so desire to become stockholders the bank was to turn over said subscriptions to the said Nease, or to the Marell .

Chemical Company; that they immediately set on foot an investigation and discovered the same facts that were discovered by A. C. Herold, as above narrated. Finding practically all of Nease's representations false, they say they went to the bank and demanded the return of the subscriptions, but found that Nease had gone to the bank and procured one of its officers to turn these subscriptions over to him upon the promise that he wanted to show them to a certain party, and would return the same, but had not done so; that within a very short time thereafter they met Nease and demanded of him that he return the subscriptions; that he informed them that he had them down at the hotel where he was stopping in his grip, and that he would go down and get them and return them; that he went to the hotel, got his grip, and left the town on the next train, and they were never able to get control of the subscription papers, and did not know what disposition Nease had made thereof until they turned up in the hands of the receiver a short time thereafter. These answers, as above stated, were not filed until after the commissioner's report came in. These three appellants thereupon moved the court to continue the further hearing of the cause until they could take proof in support of the answers, whiih, in addition to denying the right of th plaintiff to recover against them, also prayed by way of affirmative relief that said subscriptions be cancelled and delivered up to them. Their motion for a continuance was denied, and they thereupon moved the court for leave to introduce evidence in open court in support of the allegations of the answers, and the plaintiff, by his counsel, waived notice of the taking of such proof, but the court declined to allow this to be done for the reason that in his judgment evidence supporting the allegations contained in the answers would be immaterial. This was in effect, of course, a holding that the answers of these defendants made no defense to the bill. A decree was thereupon entered against each of them assessing them as stockholders of the company for the same aliquot part of their subscription as was assessed against other subscribers.

From what we have said it appears that the subscription made by A. C. Herold was procured by the grossest sort of

fraud practised upon him, and that he promptly repudiated the same, and persistently endeavored to have the same returned to him for cancellation, and that his efforts in this regard continued from the time he made the subscription in June, 1914, until the appointment of the plaintiff as receiver in September of that year; and if the allegations of the answers of the other three appellants are true, a gross fraud was practised upon them in the use made of these subscriptions after the same were signed, and in the manner in which they were procured from the bank, as well as in the representations made by Nease in order to procure their signatures thereto.

The receiver insists that the appellants are not entitled to have their subscriptions cancelled, for the reason that the rights of creditors of the corporation have intervened, and the whole argument is based upon this theory. There are many authorities which hold that even though a subscription to the corporate stock of a corporation is procured by fraud, it will not be rescinded if after such subscription is made debts have been made by the corporation before any action has been taken looking to rescission. It seems, however, that the great weight of authority, in this country at least, is to the effect that where one has been induced to subscribe to the stock of a corporation through fraudulent representations, and he promptly, upon the discovery of the fraud, repudiates the subscription, and demands and takes measures to secure rescission, he will not be held to be a subscriber, and be compelled to pay his subscription, even though creditors would lose part of their debts in case his subscription is cancelled. *Morrisey* v. *Williams, Receiver,* 74 W. Va. 636. The doctrine contended for is based upon the theory that a creditor has a superior equity to a subscriber to the stock, and that it will be presumed that a debt contracted after the subscription is made is contracted in part at least upon the faith of the subscription. As was said in the case of *Morrisey* v. *Williams, supra,* the rule rests entirely upon the rights of creditors, or the supposed superior equities existing in their favor, and when the reason of the rule fails the rule itself must cease to have application. Now, in this case, the contest is not between the creditors and subscribers

to the stock at all, for it matters not to the creditors whether the subscriptions of these appellants are valid or invalid, their debts will be paid in full. The only effect of releasing the appellants will be that the assessment to be made against the subscribers to the stock who do not question the validity of their subscriptions will be increased. The unpaid subscriptions which are not questioned in this case are very much more than sufficient to pay all of the debts, so that the argument that creditors will be affected, and that for that reason relief must be denied to these appellants, is without weight. The interest of creditors is not in any wise affected. Do the stockholders whose subscriptions are unquestionably valid stand on any higher ground than the corporation itself? The receiver is attempting to collect these assessments against the appellants, not for the benefit of creditors, but for the benefit of other stockholders, and as said by this court in the case of *Morrisey* v. *Williams, supra,* the reason of the rule denying one who was fraudulently induced to subscribe to the stock the right to repudiate the subscription after the insolvency of the company under certain conditions is the protection of creditors, and when that reason no longer exists the rule will no longer be applied. It does not occur to us that the stockholders who alone are affected stand on any higher ground than the corporation itself would stand, and that if the corporation itself could not enforce these subscriptions in a suit against the appellants, then they cannot be enforced for the benefit of other stockholders. This is in effect the conclusion reached in the case of *Morrisey* v. *Williams, supra,* and is approved by the author in 2 Fletcher's Cyclopaedia of Corporations, § 636, p. 1419. There may be, of course, cases where there would arise equities between the stockholders which would make applicable the same doctrine that would apply as between creditors and a subscriber to the stock, but there is no showing here of anything of that sort. Practically every subscription was made long prior to the subscriptions of the appellants. It is true, there are a few made subsequent thereto, but only a very few, and they are not questioned. It occurs to us that the appellant A. C. Herold, upon the facts practically conceded, could not

be held upon this subscription, even though the interest of
creditors were involved. In this case, it does not appear that
any debts were contracted by this company after the appellants
subscribed to their stock on account of which the assessments
were made in this suit. It does appear that in a very short
time after the subscriptions were made the company was placed
in the hands of a receiver, and it may be inferred from this
that little, if any, of the indebtedness now existing was con-
tracted subsequent to the taking of these subscriptions. How-
ever that may be, there is no question here involved between
creditors and stockholders, the only question being whether
the stockholders who do not question their subscriptions will
pay a larger assessment than was made against them, or whether
the appellants will be compelled to contribute to produce a
fund for the payment of debts. There is little authority upon
the proposition as to the relation of stockholders to each other
in a case like this, for the reason that it rarely happens that
the full amount of the subscriptions to the stock of an insol-
vent corporation is not required to pay the debts, so that in
most instances the question arising is one between the cred-
itors and the stockholders.

The defense made by A. C. Herold is fully made out by the
proof offered by him not controverted by the plaintiff. His
subscription was secured by the grossest sort of fraud, and he
promptly and persistently repudiated the same, and made nu-
merous attempts to secure its cancellation from the officers
of the company. Upon any theory of the case, he is entitled
to have a decree in his favor denying the right of the receiver
to collect any assessment from him, and cancelling the sub-
scription. As to the other three appellants, the proof has not
yet been taken. If they establish the facts set up in their
answers they will be entitled to a similar decree. It is true
their answers were filed late, but the court did not decline
to hear the evidence upon that ground, but solely upon the
ground that he considered it entirely immaterial. We must,
therefore, assume that had he considered it material he would
have heard it. We are of opinion that it is material, and

that if they prove the allegations they make they are entitled to the relief they ask.

We will, therefore, reverse the decree of the circuit court of Braxton county so far as it affects the four appellants involved here; will enter a decree here denying the receiver the right to recover against the appellant A. C. Herold, and cancelling the subscriptions made by him; and as to the other three appellants, will remand the cause to the circuit court for such further decree as may be found to be consistent with the opinion above expressed after the evidence has been taken upon the issue raised by their answers.

*Reversed and remanded.*