EMPLOYERS' LIABILITY ASSUR. CORPO-
RATION, Limited, v. ASTORIA
MAHOGANY CO., Inc.

Appeal of UNITED STATES.

(Circuit Court of Appeals, Second Circuit.
May 11, 1925.)

No. 319.

**1. Creditors' suit ⟜54(1)—Refusal to permit filing of claim after expiration of time fixed held error.**

Refusal to permit creditor to file claim against receivers appointed in creditors' suit for sequestration, nearly a year and half after expiration of time fixed by decree for filing of such claims, *held* error, where only objections made were that allowance of claim would swell the total amount of the claims, and might prevent reorganization in near future.

**2. Creditors' suit ⟜54(1)—Orders fixing time for filing claims are made primarily for safety in distribution, not as forfeiture measures.**

Orders of foreclosure, fixing time for filing of claims in creditors' suit, are primarily intended for safety in distribution, and not as forfeiture of rights of dilatory creditors.

**3. Creditors' suit ⟜54(1)—Refusal to permit tardy filing of claim must be based on prejudice arising from delay in presentation.**

Refusal to permit filing of claim in creditors' suit after expiration of time fixed therefor must be based on some prejudice arising, not from claim itself, but from delay in presenting it.

**4. Creditors' suit ⟜54(1)—Creditor under no obligation to give notice of intent to present claim after expiration of time fixed therefor.**

Creditor, having failed to file claim within time fixed therefor by order of foreclosure, is under no obligation to give notice that it is conducting investigation which may lead to subsequent presentation of claim.

Appeal from the District Court of the United States for the Eastern District of New York.

Creditors' suit by the Employers' Liability Assurance Corporation, Limited, against the Astoria Mahogany Company, Inc. From an order denying the ex parte petition of the United States for leave to file claim against the receivers appointed (295 F. 767), the United States appeals. Reversed and remanded, with instructions.

Ralph C. Greene, U. S. Atty., of Brooklyn, N. Y., John G. Sargent, Atty. Gen., Harlan F. Stone, former Atty. Gen., and Jerome Michael, Paul Shipman Andrews, John Vance Hewitt, Alfred N. Heuston, and Henry Gale, Sp. Asst. Attys. Gen., for the United States.

6 F.(2d)—60

Shearman & Sterling, of New York City (John A. Garver, Chauncey B. Garver, and James A. Stevenson, Jr., all of New York City, of counsel), for appellees.

Before ROGERS, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge. The suit arose upon the usual creditors' bill, filed by a simple creditor upon behalf of itself and all others, alleging that, though the defendant company was not insolvent, its assets were exposed to waste through a multiplicity of actions by its creditors. It prayed the appointment of receivers to take over the assets and distribute them ratably among all those entitled. The defendant filed an answer to the bill, consenting to the relief prayed, upon which on January 14, 1922, the District Court passed a decree appointing the appellees receivers, directing all creditors to file their claims within 60 days, and foreclosing such as defaulted. There were provisions in the decree designed to give notice to the creditors. Later the time to file was extended to April 15, 1922.

On October 5, 1923, the appellant procured a rule nisi, supported by a petition, requiring the appellees to show cause why it should not be allowed to file its proof of claim for certain refunds alleged to be due the appellant from the defendant company. These arose out of transactions during the Great War upon contracts between the United States and the defendant, and another company which had been merged with it. The receivers opposed the application alleging that the United States before April 15, 1922, had had notice of the order and had filed a claim for taxes, that a reorganization of the company was under way which would be prejudiced, and that the receivers had borrowed over $1,000,000 from certain banks during their conduct of the business. On this showing the District Court discharged the rule nisi and dismissed the petition on December 31, 1923.

Later the proceeding was reheard upon new affidavits, which showed that the Finance Office of the United States Army had first received intimation of the existence of the appellant's claims in the early part of August, 1922, after which the investigations had proceeded continuously until the petition was filed. The District Court adhered to its former decision and dismissed the second application on February 26, 1924. The appeal was taken from both orders. The questions involved are two: First, whether the

decree of limitation may bar the appellant at all; and, second, if so, whether under the circumstances the default should have been reopened.

We find it unnecessary to decide how far such a decree as that of January 14, 1922, can conclude the sovereign. In Re Menist Co., Inc. (C. C. A.) 290 F. 532, we held that section 57n of the Bankruptcy Act (Comp. St. § 9641) did not bar the United. States, but that the trustee must have recourse to the procedure which we approved in Re Anderson, 279 F. 525. We should scarcely expect that a decree would be more effective than a statute. Possibly the same course is open to receivers under a creditors' bill as to trustees in bankruptcy; but, even so, there is an obvious difference between that and a decree for general limitation. We notice the point only to pass it, because we think that in the case at bar the petition should have been granted, had the appellant been a private person.

[1, 2] Orders of foreclosure are primarily intended for no more than safety in distribution. In this regard they are like the early orders of the same kind of the English Court of Chancery in the administration of a decedent's estate. Gillespi v. Alexander, 3 Russell, 130, 136. They enable the receivers to dispose of the property, but not to forfeit the rights even of dilatory creditors. That delay may be enough we do not deny, but certainly not unless the result of allowing the claim is to destroy intermediate interests, arising on the faith of creditors' inaction. In the case at bar we find none such. The appellees put forward two; i. e., the advances of the banks to the receivers, and the progress of the reorganization. Each is asserted in too vague terms to justify the harsh remedy imposed.

The banks have financed the receivers' purchase by letters of credit, which, in the absence of any contrary evidence, we must assume to have been secured by the goods bought. The affidavits do not even suggest that the security is inadequate, and, if it be, the claims have priority over all debts of the company, even including what may be due the United States. Equitable Trust Co. v. Connecticut Brass Co., 290 F. 712 (C. C. A. 2). The receivers must be insolvent as such before the banks can be in danger, and that possibility is not even intimated. The allegations are too vague to serve. They are that the banks' claims "will be seriously and almost irreparably prejudiced" if the claim be allowed; that the banks

would not have lent the money if it had been known; that "to obtain liquidation of the credits" (by which we suppose is meant, to get the advances repaid) "it is necessary to continue the conduct of the business, and to extend further credit to the receivers." Of these the first says nothing on which we can act. How the claims will be "prejudiced" we are not advised; so far as we can see, they will not be affected. The second is of no moment, if the banks are in fact protected. Assuming that the third can be strained to mean that, if the business be closed down, the security will be insufficient and the receivers will be insolvent, the affidavits do not say that such a counsel of desperation is likely. Before a creditor is denied his share in the estate, more must be shown than we can spell out of such vague generalities.

[3] The affidavits are no stronger as respects the reorganization. On October 24, 1923, the plan had not even been presented to the court. If the appellant has been dilatory, certainly the creditors have not been expeditious. We are not told a single detail as to what was done during the 18 months which elapsed that would not have been done in any case, nor how the claim would any more upset a reorganization in October, 1923, than in April, 1922. The affiants only say that the claim will prevent any reorganization "in the near future." In his second affidavit McMahon does go further and say that a "forced liquidation" will follow the allowance of the claim. If so, we should suppose it would have had the same result in April, 1922. We cannot exclude it for that reason; we must find some prejudice, not from the claim, but from the delay in presenting it. The affiants tell us nothing as to that. They do not say that the assets have been reduced by continuing the business, or that the creditors have bought up claims, or spent money in preparing for the reorganization. Nor do they say anything which leads us to infer more than that it will be disastrous to their plans to allow a claim on which they had not reckoned. That will not justify the exclusion of a claimant, if he can prove that his claim is real.

[4] Nor can we see that the appellant was under any duty to advise the receivers upon the first intimation in August, 1922, that it might have a claim. The transactions were manifold and complicated; first suspicions might prove groundless. Possibly it would have been wiser to file a caveat, but that

would hardly have affected the result. It seems to us altogether strained to suppose that the receivers would have shut down the business, or the creditors stopped all efforts at reorganization. In any case, the majority may not on such slight grounds forfeit what may be a valid debt.

Order reversed, and cause remanded, with instructions to accept the claim, if filed on or before June 15, 1925.