## MacNAMEE et al. v. BANKERS' UNION FOR FOREIGN COMMERCE & FINANCE, Inc.

Circuit Court of Appeals, Second Circuit. April 9, 1928.

No. 117.

1. Corporations ⬤➡80(12)—Defrauded shareholder may generally rescind after corporation's insolvency.

Generally a defrauded shareholder may rescind after insolvency of corporation.

2. Corporations ⬤➡565(4)—Mere delay, making proof of claim against receiver, does not forfeit rights of dilatory creditors.

Mere delay in making proof of claim against receiver does not forfeit the rights of dilatory creditors, so that only laches to be considered in determining right of creditor to recover is that existing prior to receivership.

3. Corporations ⬤➡ 80 (10)—Stockholders, learning of fraud before receivership, held not guilty of "laches" in not suing for rescission.

Stockholders, learning of fraud in sale of stock prior to receivership or having suspicion

that investment was a poor one, and who thereafter took no action recognizing contract for purchase of stock as valid, although not bringing suit against corporation, *held*, not by reason thereof guilty of laches in not claiming rescission until after appointment of receiver; "laches" not being, like limitation, a mere matter of time, but principally a question of inequity of permitting claim to be enforced.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Laches.]

**4. Corporations ⬚80(9)—Stockholders' knowledge that investment was unsafe is not equivalent to knowledge of fraud.**

Stockholders' knowledge that investment was unsafe does not constitute equivalent to knowledge of fraud itself in sale of stock.

**5. Corporations ⬚80(12)—Stockholders' failure to return stock certificate does not prevent relief in equitable proceeding to rescind.**

Failure of stockholders, seeking rescission of stock certificates, to offer to return their certificates, does not prevent relief in equitable proceeding to rescind, since decree may make suitable provision for restitution.

**6. Corporations ⬚80(12)—Stockholder's failure to return dividend received on stock is not fatal to claim for rescission in equitable proceeding.**

Failure of stockholder, seeking rescission of stock certificate on ground of fraud, to offer to return dividend received on stock previously thereto, *held*, not fatal to his claim for rescission in equitable proceeding, since decree can provide for accounting therefor.

**7. Corporations ⬚80(12)—Stockholders, seeking rescission on ground of fraud, held not barred on ground that it would constitute preference over other shareholders.**

Stockholders of corporation, seeking rescission of contract for purchase of stock on ground of fraud, *held* not barred from rescission on ground that it would constitute a preference over other shareholders similarly defrauded, since, as between stockholders establishing right to rescission and those not having such right, the former are entitled to priority.

**8. Corporations ⬚80(12)—Possibility of depletion of receivership fund is not sufficient to deprive defrauded shareholders of right to rescind certificates.**

Possibility that fund remaining in receivership after payment of corporation's creditors may be depleted by litigation relative to right of shareholders to rescind certificate of stock on ground of fraud is not sufficient reason to deprive them of opportunity to prove right to rescind.

Appeal from the District Court of the United States for the District of Connecticut.

Creditors' bill by George MacNamee and others against the Bankers' Union for Foreign Commerce & Finance, Inc. From a decree confirming a report of the special master, and disallowing certain claims presented in the receivership, claimants appeal. Reversed and remanded.

Appeal from an order of the District Court of the United States for the District of Connecticut which confirmed the report of a special master and disallowed the claims of appellants in an equity receivership. Reversed.

In November, 1923, a creditor's bill was filed by MacNamee and other alleged creditors against the Bankers' Union for Foreign Commerce & Finance, Inc., a Connecticut corporation, hereinafter referred to as Bankers' Union. Forthwith an order was entered appointing James P. Glynn receiver, and directing that notice by mail and publication be given to all known creditors and stockholders. A very large number of persons had contracted to purchase stock of the Bankers' Union upon the partial payment plan. This stock had been sold, usually at the price of $130 per share, to persons of very limited means, few of the subscribers having contracted for more than six shares of stock, and some for only a single share. An initial payment of at least $20 per share had been exacted, and the balance of the purchase price was evidenced by the purchaser's note or notes and was payable in monthly installments. Almost all of the purchasers had defaulted on their payments prior to the appointment of the receiver. After the receivership, the receiver notified installment purchasers to cease paying. In June, 1925, or shortly before, George Lytle and 123 other part-paid purchasers filed their claims setting forth that their respective stock subscription contracts had been obtained by means of false and fraudulent representations by agents of the Bankers' Union, that they had only recently discovered the fraud, and that they elected to rescind their contracts and to claim as creditors a return of the sums respectively paid upon their subscriptions. An order was entered extending to June 29, 1925, the time for the filing of claims founded on fraud. Edward J. Lonergan was appointed special master to take evidence of such claims and to report to the court. After some hearings had been held, the receiver filed motions to strike out the claims for various reasons, including laches. These motions were also referred to the same master.

At the hearings, the claims were opposed both by the receiver and by counsel for a so-called Stockholders' Protective Committee. Thirty-three of the petitioners and some additional witnesses testified before the master. The testimony shows that a selling campaign

to market the stock of Bankers' Union was undertaken by the H. V. Greene Company in 1920 and continued for several years, that the selling agents made to prospective purchasers numerous representations of fact which for purposes of this appeal must be deemed false, and that those of the claimants who testified had relied on one or more of such false representations in making their subscriptions. On March 20, 1926, the special master suspended further hearings on the ground that each subscriber whom he had heard had lost the right to rescind his contract by reason of laches, and that the same obstacle would preclude all the other petitioners from successfully asserting claims as creditors. In April, 1926, he filed with the court a lengthy report recommending the dismissal of the claims of all the petitioners, to which they promptly filed objections and exceptions. A hearing thereon was had before the court in June, 1926, and thereafter an order was entered approving the master's report and striking the petitioners' claims "from the list of claims on file as claims against the assets in the hands of the receiver." This is the order appealed from.

Mrs. E. Jean Nelson Penfield, of New York City (Ralph O. Wells, of counsel), for appellants.

Benedict M. Holden, of Hartford, Conn., for receiver.

Lord, Day & Lord, of New York City (Benedict M. Holden, of Hartford, Conn., James Francis Ryan, of Philadelphia, Pa., Sherman Baldwin, of New York City, and Thomas J. Birmingham, of Hartford, Conn., of counsel), for Stockholders' Protective Committee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above). The bill upon which the receiver was appointed sets forth that the corporation is without directors and officers and that it is necessary that a receiver take charge of its assets and "dispose of the same for the benefit of creditors and all parties in interest." Apparently all commercial creditors have been or will be satisfied and a considerable fund will remain for distribution as the court may hereafter order. This fund, all creditors being paid, must either be returned to the corporation or distributed among the shareholders. The business of the corporation has been abandoned. In brief and argument it is indicated by counsel for the receiver and counsel for the stockholders' protective committee, the latter being the attorney who represented the petitioning creditors, that the intention is to distribute the fund to shareholders. Under the circumstances of this case, this is the disposition which should be made of it. See Toledo, etc., R. Co. v. Continental Trust Co., 95 F. 497, 533 (C. C. A. 6). We have a strong suspicion that the suit should have been framed as a bill for dissolution under section 3443 of Connecticut General Statutes, rather than a creditors' bill. Whether the federal court would have had jurisdiction of such a suit we do not say. See O'Brien v. Lashar, 274 F. 326, 329 (C. C. A. 2); cf. Pusey & Jones Co. v. Hanssen, 261 U. S. 491, 43 S. Ct. 454, 67 L. Ed. 763. All but three of the twelve complainants appear in the receiver's list of partially paid subscribers to stock. The bill alleges merely that the complainants are simple creditors, without any allegations as to how their debts arose. But, whatever the real facts may be, we assume that the proceeding is, as on its face it appears, a creditors' suit. We assume also, as conceded upon argument, that the receiver has a fund which, after paying debts due the complainants and other creditors, will be available for distribution to shareholders. The contest on the present appeal is really between two classes of shareholders: The claimants, appellants, being defrauded subscribers to stock who seek to rescind and attain thereby a rank prior to nonrescinding shareholders; and the receiver, appellee, representing shareholders who remain as such either because they cannot or do not choose to rescind.

We must assume that each claimant has proved, or would prove if heard, that his subscription was induced by such fraud on the part of Bankers' Union as would have entitled him to rescind his contract had he immediately discovered it and sought rescission. Unless this be assumed, there could be no possible justification for terminating the hearings when only part of the claimants had been heard at all and none of them had completed his proof. It is unnecessary, therefore, to consider whether the H. V. Greene Company, through whose sales organization the stock was marketed and whose fraud is apparently not denied, was an underwriter or an agent. The probabilities appear to be that the relation was one of agency and that a full disclosure would show that the Bankers' Union was completely under the control of Greene and his company. But in any event the claimants were entitled to a chance to prove the agency, unless it be assumed.

[1] Granting, then, that the claimants were originally entitled to rescind, we come to the

question whether the evidence before the master establishes that all, or any, were barred from rescission. While the rule may be otherwise in England, in this country it is generally held that a defrauded shareholder may rescind after the insolvency of the corporation. Newton Nat. Bank v. Newbegin, 74 F. 135 (C. C. A. 8), 33 L. R. A. 727; Florida, etc., Co. v. Merrill, 52 F. 77 (C. C. A. 5); Salter v. Williams, 244 F. 126 (C. C. A. 3); Ryan v. Mt. Vernon Bank, 206 F. 452 (C. C. A. 2); Brown v. Allebach (C. C.) 166 F. 488, 495; Gress v. Knight, 135 Ga. 60, 68 S. E. 834, 31 L. R. A. (N. S.) 900; Morrisey v. Williams, 74 W. Va. 636, 82 S. E. 509, L. R. A. 1915D, 792. It may well be that his claim as a creditor of the corporation for a refund of sums paid for shares fraudulently sold to him may be deferred to claims of other creditors whose relations with the corporation were never on the footing of membership in the corporation. See In re Morris Bros., 293 F. 294 (C. C. A. 9). That question need not trouble us here; it is conceded that, if there are any creditors other than subscribers, the assets in the hands of the receiver are more than sufficient to pay them.

The grounds alleged as barring rescission are (1) delay in seeking it; and (2) that to allow it will virtually give petitioners a preference in the distribution of assets over other shareholders, many of whom were similarly defrauded.

[2] Most of the authorities which have discussed the effect of laches upon rescission of a stock subscription have involved conflicting claims between creditors and defrauded shareholders. Such a case is Upton v. Tribilcock, 91 U. S. 45, 55, 23 L. Ed. 203, where the court said that shareholders who claim to be relieved on the ground of fraud "must act with the utmost diligence and promptitude." See, also, Newton Nat. Bank v. Newbegin, supra. Not only will neglect to act after knowledge of the fraud bar relief, but it is said that one must use diligence to discover the fraud. The appellants rightly remind us, however, that such language must be read with the limitations implied by the situation then before the court. A different rule of diligence may be required when the contest is between the defrauded shareholder and creditors than when it is with the corporation or shareholders who stand in its shoes. See Dunn v. State Bank, 59 Minn. 221, 61 N. W. 27, 28. It would seem that a distinction might well be taken between delays before and delays after the receivership. While the corporation is a going concern, a shareholder is in effect a partner. If he learns facts which

would entitle him to change from a partner with an interest in the profits of the business to a creditor interested only in getting out his money, he ought to be compelled to choose at once. It is obviously unjust to creditors and to other shareholders for him to delay his election in order to gamble on the success of the business, profiting as a shareholder if it succeeds, and turning himself into a creditor if it fails. But after insolvency the situation changes. There is then no longer an opportunity to profit by delay; the defrauded shareholder can only be a creditor of one rank or another for all shareholders are then, in effect, a class of creditors, since they are entitled to the final distribution of the fund if anything remains after paying creditors of prior rank. If rescission is allowed he will rank ahead of nonrescinding shareholders. His delay after the receivership in electing to rescind prejudices only himself, in that the fund may be distributed before he has made his election. But so long as the fund has not been distributed, he should not lose the right to prove that his claim to the fund is superior to claims of undefrauded shareholders. See In re Wm. C. Jones Co. (D. C.) 289 F. 262. Mere delay in making proof of claim against receivers does not forfeit the rights of dilatory creditors. Employers' Liability, etc., Corp. v. Astoria Mahogany Co., 6 F.(2d) 945, 946 (C. C. A. 2); People v. Hopkins (C. C. A.) 18 F.(2d) 731. Therefore, we think that on the record before us the only laches to be considered is such as may have existed prior to the receivership.

[3] Eighteen of the claimants heard by the master were found by him, groups I and II of his report, to have learned facts prior to the receivership which charged them with knowledge of the fraud. Six of these eighteen, he found, had actual knowledge of the falsity of the representations upon which they had relied; twelve had had their suspicions aroused that their investment was a poor one. All of them thereupon ceased to pay further installments under their contracts. Some of them wrote demanding back their money; others did not. None of them brought suit. These facts the master deemed laches which barred rescission.

As observed by Mr. Justice Brewer in Galliher v. Cadwell, 145 U. S. 368, 373, 12 S. Ct. 873, 875 (36 L. Ed. 738):

"Laches is not like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or the parties."

[4] None of the six who learned of the fraud thereafter took any action which recognized his contract as valid. There was no delay in order to gamble upon the success of the enterprise. Each forthwith stopped payments. Under the contracts this gave the corporation the power of forfeiting their subscriptions. Their failure promptly to bring suit for rescission might estop them from asserting their claims in the receivership as against creditors or stockholders who became such in reliance upon their subscriptions being outstanding, but, as against the defrauding corporation, or stockholders whose rights are no better than its, we do not think that it should necessarily charge them with laches. No one has so changed his situation during the claimants' inaction as to make it inequitable to allow the rescission. See White v. Am. Nat. Life Ins. Co., 115 Va. 305, 78 S. E. 582; Am. Tube Works v. Boston Machine Co., 139 Mass. 5, 29 N. E. 63. If those who had actual knowledge of the fraud are not barred, of course those who merely had suspicions are not. Nor would we agree that knowledge that the investment is unsafe is equivalent to knowledge of the fraud itself. See Higgins v. Crouse, 147 N. Y. 411, 42 N. E. 6.

[5] Six other claimants had paid in full and received stock certificates. The master considered them barred from rescission because they failed to offer to return their certificates. While it is true in a suit at law that a defrauded purchaser of stock must tender a return of the certificate (Loomis v. Pease, 234 Mass. 101, 125 N. E. 177), the principle has no application to an equitable proceeding to rescind where the decree may make suitable provision for restitution. Kley v. Healy, 127 N. Y. 555, 28 N. E. 593; Cawthra v. Stewart, 59 Misc. Rep. 38, 109 N. Y. S. 770; Twin Lakes, etc., Co. v. Dohner, 242 F. 399 (C. C. A. 6). Indeed, under the circumstances, it may be doubted if the certificate is longer a thing of value requiring return.

[6] One of the claimants received one 5 per cent. dividend on two shares of stock in March, 1923, and there is no evidence that he offered to return it. This was thought fatal to his claim. We cannot agree. The dividend must be returned or accounted for before the claimant can have relief, but the decree can provide for it.

We do not find, therefore, on this record that any of the claimants was barred by laches prior to the receivership. This is not to say, however, that proof may not hereafter be offered which will show that the right to rescind has been lost.

[7] The second ground upon which it is contended that all the claimants should be barred from rescission is that to allow it to petitioners will give them a preference over other shareholders similarly defrauded. This contention is based upon the erroneous assumption that it is now too late for others to seek rescission. From what we have already said it is apparent that this is not so. There is still an opportunity for other defrauded shareholders to file similar claims. In fact, we think that they should be encouraged to do so in order that all who have been defrauded and who are not shown to have lost the right to rescind may be let in to share the fund as claimants of equal rank. Those who do not establish the right to rescission will be entitled to share as stockholders if any fund remains after satisfying the claims of rescinding stockholders. As between these two classes of claimants, the former are entitled to priority. See Stalnaker v. Gum, 87 W. Va. 283, 104 S. E. 730.

[8] Whether it will be wise for the defrauded subscribers to attempt to establish priority may be doubtful. It may be, by reason of the cost of litigation, the depletion of the fund for proper expenses, and the great number of defrauded subscribers who will be let in to share it, that the appellants would fare better to accept the status of shareholder without contest than to attain the status of creditor with it. If such considerations would ever justify a court of equity in refusing to allow rescission, which we do not now decide, this record does not adequately raise the question. It does appear that other subscribers have been defrauded by representations similar to those made to appellants. How many such there may be we cannot tell. In this respect the case is different from Joyce & Co. v. Eifert, 56 Ind. App. 190, 105 N. E. 59, where all the subscribers were defrauded. We do not know who are the shareholders of the Bankers' Union other than those whose names appear upon the receiver's list of partially paid subscribers, but that there are others we do know; and it is not unlikely that some of them may be the officers who are alleged to have been guilty of fraud in selling the stock. To deny claimants the right to rescind on the ground of general convenience in administering the fund might produce the highly inequitable result of putting them on a parity with the very men who defrauded them. Therefore the possibility that the fund may be depleted by the litigation is not a sufficient reason to deprive the defrauded subscribers of an opportunity to prove, if they can, that they are entitled to rescind.

Nearly five years have elapsed since the

receiver was appointed. The receivership should be brought to a conclusion and the fund distributed with as much dispatch and at as little additional expense as possible.

The decree is reversed, and the cause remanded for further proceedings in conformity herewith.