WILLIAM BREWSTER, ET. AL. Plaintiffs in Error *vs.* WILLIAM WAKEFIELD, Defendant in Error.

A Promissory Note bearing interest at a specified rate "from the date thereof," bears such specified rate *after* maturity and until paid.

Legal Interest is to be applied only when no rate is agreed upon or specified in the contract.

The intention of a party to a Contract should control its legal effect, when such intention is clearly manifest from the face of the contract; but when the intention is not clear, the contract is to be construed most strongly against the promissor:

· WRIT OF ERROR TO THE DISTRICT COURT OF RAMSEY COUNTY.

The following are the points and authorities upon which the Plaintiff in Error relies in the above-entitled cause :

*First.* The Court below erred in decreeing the payment of interest upon the promissory notes mentioned in the decree at a greater rate than seven per cent. per annum from the maturity of the said notes respectively, by the Defendant Brewster.

*Second.* The Court below erred in decreeing the payment out of the proceeds of the sale ordered in the decree, of interest upon the said promissory notes at any greater rate than seven per cent. per annum from and after the maturity of the said notes.

*Third.* The said notes contain no express contract to pay interest after their maturity. The rate of interest specified in them respectively, refers to and is limited and controlled by the time specified for its payment. No interest can therefore be recovered upon them from and after the time of their maturity, except as damages for the non-payment of principal when due, and, as such, only at the rate fixed by statute in the absence of an express contract, viz: seven per cent. per annum.

Authorities : *Rev. Stat. p.* 155, *chap.* 35 ; *Bander vs. Bander*, 7 *Barb. S. C. Rep.* 560 ; *Macumber vs. Dunham*, 8 *Wend.* 553 ; *U. S. Bank, vs. Chapin*, 9 *Wend.* 471 ; *Ludwick vs. Huntzinger*, 5 *Watts & Serg.* 51, 60—also cited *in note to Chitty on Bills*, (11*th Am. from* 9*th Lond. Ed.*) 682 *marginal paging. Clay vs. Drake, Minor*, 164 ; *Henry vs. Thompson*,

*Minor,* 209—*to be found also in 2d U. S. Dig. p.* 624, *secs.* 243, 244.

The following are the points and authorities relied upon by the Defendant in Error:

*First.* The rates of interest are clearly expressed in the terms of the promissory notes, and fixed by the contract of the parties, which the parties were competent to do, and the rates agreed upon are legal and valid by the provisions of our Statute. · *See R. S. p.* 155, *chap.* 35.

*Second.* It is the duty of the Court to construe the contract and give it effect according to the intention of the parties at the time of making it as gathered from the face of the instruments. *Story on Contracts, p.* 556, *secs.* 633, 634; 7 *Barbour's S. C. Rep.* 560—*cited by Plaintiff in Error; Chitty on Contracts, p.* 74, (7*th Am. Ed.*)

*Third.* If the terms of the notes are ambiguous, or the intention of the parties appear from the face of the notes doubtful, they are to be taken and construed by their terms most strongly against the maker. See (9*th and* 12*th edition) Chitty on Bills, p.* 682—*Note; Chitty on Contracts, p.* 95, *and notes.*

*Fourth.* The terms of the notes and the manifest intention of the parties were a contract on the part of the maker to pay the respective rates of interest mentioned in the notes, as well after maturity as before, until the principal sum should be paid. 15 *Wendell's Rep. p.* 76, *Fake vs. Eddy's Exec'rs.*

*Fifth.* That the judgment and decree of the Court below was correct and well supported by the evidence appearing from the notes and mortgage.

BRISBIN & BIGELOW, Attorneys for Plaintiffs in Error.

AMES & VAN ETTEN, Attorneys for Defendant in Error.

*By the Court.*—CHATFIELD, J.   Wakefield, the Defendant in Error, brought his action and obtained judgment in the District Court against Brewster and others, the Plaintiffs in Error, for the foreclosure of a mortgage and sale of the mortgaged premises.   The mortgage was given to secure the payment of two promissory notes, bearing date July 11th, 1854, and pay-

23

able twelve months after date. One of the notes was for the sum of $5,583 75, with interest at the rate of twenty per centum per annum; the other note was for the sum of $2,000, with interest at the rate of two per centum per month. Upon the assessment of the amount due upon the notes, the Plaintiff below claimed to be entitled to interest on the notes at the rates specified in them, respectively, from their date to the time of judgment. To the allowance of such interest, Brewster—who was the mortgager—objected, and insisted that interest on each of the notes should be computed at the rate specified in it from the date of the notes to maturity, and that after maturity interest should be computed at the general legal rate of seven per centum per annum. The District Court overruled the objection, and allowed to the Plaintiff below interest on each of the notes at the rate specified in it from the date thereof to the time of judgment. Brewster excepted, and removed the case to this Court by writ of Error. The exception stated presents the only question to be determined by this Court in the case, and is simply this: Does the rate of interest specified in a promissory note cease at the maturity of the note?

The question must be solved by the application of the provisions of the statute "of the interest of money" to the terms of the contracts contained in the notes. That statute contains only two short sections, in these words:

"SECTION 1. Any rate of interest agreed upon by the parties "in contract specifying the same in writing shall be legal and "valid.

"SEC. 2. When no rate of interest is agreed upon or speci- "fied in a note or other contract, seven per centum per annum "shall be the legal rate."

The two prominent ideas that strike one in analyzing this Statute are these: That the legal or general rate of interest —seven per centum per annum—is to be applied only "when no rate of interest is agreed upon or specified in a note or contract;" and if any rate is specified in the contract or note—it matters not what it may be—it is valid, and consequently to be applied to the demand. The Statute contains no limit as to the time during which the rate agreed upon in the contract shall run. Consequently, if there is any such limit it must result from

the operation of some controlling legal principle.    Is there any such principle properly applicable under the provisions of our Statute ?

Interest is but an incident to the debt that bears it—a rent that the debtor pays for the use of his creditor's money.   The power and influence which money confers upon its owner has hitherto induced restrictions upon the rates of use, and even absolute prohibitions beyond certain rates, under severe penalties and forfeitures, by legislative enactment.   It seems to have been the purpose and design of our Statute to sweep away all such obstacles in the way of contracts for interest, and to leave parties making them free from all legislative guardianship.   It is based upon the principle that if a person is competent to contract at all, he is as competent to contract for the rate of interest as for the use of a horse or for rent of land or any other matter within the scope of legal and moral contracts between one person and another.   In my view of the design and effect of our Statute, contracts in writing, by which one person agrees to pay a specified rate of interest on a debt due or to become due to another, should be construed by the same rules of legal construction which are applied to every other contract in writing between parties.   The intention of the parties should, when clearly manifest upon the face of the contract, control its legal. effect and the rights of the parties under it ; but when the intention is not clear, the contract is to be construed most strongly against the promissor, and especially so if a different construction results in allowing a person to derive a benefit from his own breach of faith and moral delinquency.

What was the intention of the parties to the notes in this case in regard to the time when the rate of interest specified in them should cease ?   Did the maker of the notes intend or expect that the rates of interest mentioned in the notes should cease at their maturity ?   I cannot think so.   But suppose *he* did.   How was it with the other party—the payee ?   Is there anything in the contract to show that he designed or anticipated that his rate of interest on the debt was to be reduced to a lower rate after maturity than it· bore before it was due ?   Such an idea is hardly supposable.   If any such conclusion is to be drawn from the contract, it must be by implication : for certainly it

is not so expressed; and the implications to be drawn from construction must be against, not the promissee, but the promissor: and the implication to be made against him in solution of any doubt arising out of the terms of the contract, is that the parties intended that the rates of interest specified in the contract should run upon the debt until it should be paid. Such construction is not at all inconsistent with our Statute, but, in my view, strictly conformable to it. It is the rate agreed upon by the parties—the stipulated value of the use of the money—the specified rate of interest in the notes, which excludes the application of the general legal rate.

The rate of interest on money is a proper and lawful subject of contract. It always has been so, but generally under more or less statutory restrictions. Now, here it is as free from such restrictions as is the price or use of property of any kind. In this state of the subject of interest, a written promise to pay a given sum of money, with a specified rate of interest, on some future day, certainly seems to bear a two-fold aspect:— first, that the debt—the incident as well as the principal, shall be paid by the day; second, that the debt shall bear a specified rate of interest as its incident. The debt and its incident are co-existent. No change is to be presumed. In the absence of any action of the parties, no rule of law should—nor do I think any does—intervene to sever one from the other. The agreement fixing the rate of interest on the debt overrides and supersedes the application of general statutory rate, so long as the debt to which the agreed rate is fixed, or any part of it exists: for the Statute is, by its terms, subservient to and must be controlled by the agreement of the parties.

This construction is directly supported by the rule for computing interest upon contracts for the payment of money bearing interest at a maximum rate allowed by statute. In computing interest on such demands, no rest is made at their maturity. If the contract to pay interest ceases at the maturity of the debt, and the subsequent interest is allowed only in virtue of the statute, then a rest should be made at such maturity and the whole amount of the debt and interest then due should bear interest from the time at the statutory rate. Such has never, to my knowledge, been the rule of computation of *in-*

terest on such demand; but the rule has been, to compute the interest on the principal debt from its date to the time of payment or judgment—a rule founded upon the contract, and not on the statute allowing interest.

As well might it be said that a tenant holding over after the expiration of his term should not pay rent at the rate reserved in the lease under which he entered, and should be liable to pay only the reasonable value of the use, as that the maker of the note under our Statute be liable to pay the rate of interest on his debt over-due which he by his written promise agreed it should bear before maturity. They both stand upon the same principle. The tenant refuses to surrender at the expiration of his term, and for that reason he will not pay the rate of rent agreed upon in the lease, and insists upon a right to be discharged by payment of a less rate upon a mere legally implied promise to pay the value of the use and occupation; the maker of a note refuses to pay it at maturity, and for that reason insists that he is discharged from his agreement to pay interest, and the payee entitled only to the legal and less rate. Such a principle and rule has never been tolerated between landlord and tenant, and never should be allowed to prevail between the promissor and promissee in a contract for the payment of interest for the use of money.

The moral influences and effects of such a rule if allowed to prevail are in all respects deleterious and reprehensible. The rule, if applied to contracts made in view of our Statute, offers a premium upon bad faith and allows persons to reap rich harvests of wealth out of their own violated promises and forfeited pledges; it allows them to avail themselves of benefits derived from their own wrongs, and to enjoy them. To such a doctrine I cannot assent, in whatever form it may arise.

The cases cited by the Plaintiff in Error upon the argument seem to have arisen under the influence of statutory limitations and restrictions upon contracts for the interest of money—an influence the like of which does not prevail here. There it would seem that the statutes control the contract beyond the specified limit of interest: here the statute has no application to or effect upon the agreement to pay interest, for it is only in the absence of any agreement that the statute has any ope-

ration. I am constrained to think that agreements made in view of our statute of interest stand upon another and different principle from the cases cited and which arise under statutory restrictions. There the statutes controlled the agreement: here the agreement prevails over the statute.

The only case cited that bears any close analogy to this is that of *Ludwick vs. Huntzinger*, 5 *Watts & Seargent's Rep.* 51. That case would seem to be within the principle contended for by the Plaintiff in Error. While I hesitate and regret to differ with the eminent Court who pronounced that decision, I am constrained to question the correctness and propriety of the principle upon which it rests—a principle that changes the terms of a lawful contract between parties; and I seriously doubt whether that Court would have applied the doctrine and rule of that case to one like this—to a case in which the effect would be to diminish the liability of the promissor and give him a direct and material benefit as the result of a violation of his promise. If that case is to be considered as founded upon an established doctrine fixing an inflexible rule applicable to all cases, whatever the consequences may be, and upon whomsoever they may fall—overriding the old sacred and salutary maxim that no man shall be allowed by the law to derive a benefit by the commission of a wrong or neglect of a duty,—then I cannot consent to adopt or follow it as a precedent, or sanction its moral or strengthen its force.

In my opinion, the judgment of the District Court should be affirmed.