W. R. TABLER, *Receiver, etc.,* v. A. G. HIGGINBOTHAM

(No. 6916)

Submitted January 15, 1931.   Decided January 20, 1931

*H. H. Rose* and *Larrick & Lemon,* for plaintiff in error.
in error.

*Willis & Ball,* for defendant in error.

LIVELY, JUDGE:

From a judgment on a directed verdict, rendered May 23, 1930, defendant Higginbotham prosecutes error.

Defendant owned 42 shares of stock in the Bank of Jacksonburg on July 29, 1929, the date of the appointment of plaintiff as receiver for the bank, and on September 24, 1929, the commissioner of banking assessed against each stockholder owning stock on June 22, 1929, the full "double liability" of stockholders, the bank being insolvent. This action is to recover against defendant the sum thus assessed.

The bank was chartered in 1903 with an authorized capital stock of $25,000.00, divided into 250 shares of the par value of $100.00 each. Defendant acquired fifteen shares in 1908 fifteen shares in 1909, one share in 1912, and eleven shares in 1921, making 42 shares, all of which he owned when the receiver was appointed.

On June 22, 1929, the board of directors passed a resolution by which it turned over to the commissioner of banking all of the bank's assets and liabilities for liquidation, and immediately an assistant commissioner took charge, closed the doors, found the capital impaired, and that the assets were not sufficient to pay the liabilities due to losses, embezzlement and a "run" on the bank. Defendant was duly notified of the assessment, made September 24, 1929, and payment requested. Upon his failure to pay, this suit was promptly instituted to December Rules, 1929.

Upon the trial of the issue raised by defendant's plea of *nil debit,* defendant attempted to show by plaintiff's witnesses that the bank had sufficient assets, including liability of the directors (alleged to be an asset), to pay the liabilities without resorting to collection of the stockholder's statutory "double" liability. The trial judge refused to allow the question of solvency of the bank to go to the jury, holding that the banking statute vested in the commissioner of bank-

ing the power to determine the question of insolvency. The refusal of the court to allow the assets and liabilities of the bank as found by the officers of the banking department to go to the jury, for the purpose above stated, is the principal assignment of error relied upon in oral argument and brief. The consideration of this assignment impels a close inspection, and construction of the banking act of 1929, which radically changed the former banking laws as contained in Barnes' Code of 1923 and the subsequent amendments thereto, and which act of 1929 designates the act as chapter 54-d of the Code. It is now incorporated in Chap. 31 of the Revised Code of 1931. Under that act, the commissioner of banking is given far-reaching powers in the visitation, regulation and control of banks and like institutions, and in the summary and expeditious winding up of their affairs. In former years, the slow process of the courts in winding up insolvent banks, which often delayed final settlement for many years, had brought about insistent criticism and complaints, and the legislature, following the federal act and other progressive legislation, enacted an expeditious, exclusive and comparatively inexpensive method of liquidation. The intent of these acts should be effectuated by the courts. In sec. 2 of chap. 23, Acts 1929, under consideration, authority is given the commissioner, upon finding that the capital stock of a bank is impaired and upon failure to make the bank solvent, upon notice from him, to appoint a receiver who shall take charge and wind up its affairs under the supervision of the commissioner. The commissioner determines the question of the insolvency, a power given him by the act, and the procedure for winding up the bank, faithfully performed, is exclusive. *Picklesimer* v. *Morris, Judge*, 101 W. Va. 127. Before suit can be instituted by the receiver to collect the liabilities of the stockholders it must appear that the assets of the insolvent corporation are not sufficient to pay in full all of its creditors and depositors. While the act does not say who shall first determine the insufficiency of the assets to pay the creditors in full, it seems to us that it would necessarily fall upon the commissioner and receiver who is required, upon taking charge, to make, in duplicate, a complete inventory of

12

all assets and an itemized list of all liabilities, the original to be filed with the commissioner and the duplicate retained by the receiver. This provision, coupled with the authority of the commissioner to determine the insolvency of the bank before appointment of the receiver, accentuates the intent of the statute that the question of the insolvency of the bank is to be determined by the commissioner or receiver or perhaps jointly by them, before suit can be instituted against the stockholders for double liability. In that particular, the statute is somewhat broader and clearer than the federal statute, sec. 9272, Barnes' Federal Code 1919, which provides: ''On becoming satisfied, as specified * * * that any association has refused to pay its circulating notes as therein mentioned, and is in default, the comptroller of the currency may forthwith appoint a receiver * * *. Such receiver, under the direction of the comptroller, shall take possession of the books, records, and assets of every description of such association, collect all dues, and claims belonging to it * * * and may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders.'' The United States Supreme Court has held, and many state courts having similar statutes, have consistently decided that the question of the insolvency of the bank is with the comptroller and his determination is conclusive. Thus( in *Kennedy* v. *Gibson*, 8 Wall. 498, 505, it was said: ''The receiver is the instrument of the comptroller. He is appointed by the comptroller, and the power of appointment carries with it the power of removal. It is for the comptroller to decide when it is necessary to institute proceedings against the stockholders to enforce their personal liability, and whether in whole or in part, and if only in part, how much shall be collected. These questions are referred to his judgment and direction, and his determination is conclusive. The stockholders cannot controvert it. It is not to be questioned in the litigation that may ensue. He may make it at such time as he may deem proper and upon such data as shall be satisfactory to him. This action on his part is indispensable whenever the personal liability of the stockholders is sought to be enforced and must precede the institution of suit by the receiver.'' Citation of

cases of similar decision, and there are many of them, is unnecessary.

It is argued that inasmuch as the "double liability" of a stockholder in a state bank has been held by this Court to be a secondary liability to be discharged after all the other assets of the bank have been administered and debts yet remain, that it was not the intention of the statute to allow the enforcement of the liability until it was so determined either by actual administration of the other assets, or by judicial determination of insolvency. The statute provides in terms that without waiting to administer the assets, *or delaying for any other cause,* the receiver shall collect from the several stockholders their liabilities in one suit or in separate suits. Then, if the assets, including all sums collected from the stockholders, shall more than suffice to pay the debts and surplus is to be distributed "first to the stockholders who have paid any sums upon their extraordinary liability as stockholders pro rata up to the respective amounts paid by each of them." It follows that if the assets, other than the double liability sums collected, are sufficient to pay the debts, there could be little harm done to the stockholders by "forthwith" payment of their statutory liability. The secondary character of the double liability remains. The other assets of the bank are first to be applied to the debts. The receiver holds the money contributed by the stockholders to supply any deficiency in order that the creditors may be protected. The fund is somewhat in the nature of a trust. The collection of this fund is not to await the administration of other assets; and delay in its collection is not countenanced "for any other cause." But it is argued that to forthwith collect this liability, and then return it or a part thereof would inflict an inconscionable. hardship upon the stockholder. This same argument was advanced in *Studebaker* v. *Perry,* 184 U. S. 258, and was disposed of by Justice Shiras on page 262 as follows: "In many instances, the value of the bank's assets might make it altogether probable that but a small portion of the stockholders' contribution would be needed. To require payment in full of money which might be held for years while the bank's affairs were being wound up, and then be returned without in-

terest, would certainly be a hardship. If, to avoid that hardship, the comptroller should postpone the assessment until he could fully inform himself of the condition of the bank's affairs, in the time that might thus elapse, some of the stockholders might become insolvent or remove their property from the reach of legal proceedings, and thus a loss be thrown upon the creditors.'' The statute contemplates that more of the double liability might be collected than was necessary to discharge the debts, and it must be presumed that considerations of public welfare outweighed inconvenience and hardship which the stockholder might suffer. But it is not our province to find reasons for the act which is plain. The intention of a statute makes the law, and the cardinal rule in construing a statute is to find and give effect to that intention, even though it may not be in strict conformity with the letter of the law. And, in view of the purpose and intention of the comprehensive banking act of 1929 to provide a comprehensive, convenient and summary method of visitation, examination and control of banks and for an exclusive method of expeditiously winding up those which are insolvent, we have concluded that the determination of the commissioner of banking that a bank under his receivership is insolvent, is conclusive and may not be questioned by a stockholder in a suit by the statutory receiver of such bank against him for the purpose of enforcing his double liability as such stockholder. It was not error to refuse the evidence proffered.

It is argued that if the statute be construed to give the commissioner the right to determine the insolvency of the bank, and then proceed to collect double liability in advance of conclusive necessity therefor and in the event the other assets were nearly or quite sufficient to pay the debts, then to repay the stockholder, would render the statute unconstitutional as impairing the obligation of the stockholder's contract with the state. We can see no impairment in the statute of the obligation to pay, or not to pay, the double liability. The statute affords a quicker and more efficacious remedy than heretofore by which the liability may be enforced. That the remedy may be more burdensome does not render it unconstitutional; and by section 8, chapter 53, Code,

the law governing and controlling the bank at the time of its charter could be altered or repealed. The law reads that provision into the bank's charter. *Cross* v. *Ry. Co.*, 35 W. Va. 177; *State* v. *Petroleum Co.*, 58 W. Va. 108.

A more serious assignment of error is that the directed verdict and judgment thereon is based on the full par value of the 42 shares owned by defendant at the time the bank was closed, June 22, 1929, when there is no evidence to show that defendant owned all or any of his stock at the time any of the liabilities or losses of the bank accrued. The declaration charged that defendant "owned such shares when the bank became indebted as aforesaid." It says that the indebtedness, which caused the impairment of the capital stock and closing of the bank, existed on or before the 22nd day of June, 1929. There was no evidence at the trial to show when the liabilities of the bank accrued. The constitution, Art. VI, sec. 6, says that the stockholders "shall be personally liable to the creditors thereof, over and above the amount of stock held by them respectively to an amount equal to their respective shares so held, for all its liabilities accruing *while they are such stockholders.* The statute, chapter 54, sec. 78-a (3), Code, contains the same language. In *Heater* v. *Lloyd*, 85 W. Va. 570, 577; *Dunn* v. *Bank*, 74 W. Va. 594; and *Morrisey* v. *Williams*, 74 W. Va. 636, this Court held that a stockholder is subject to the double liability only with respect to liabilities incurred by the bank during the time of his ownership of stock. Such is the plain provisions of the constitution and statute in pursuance thereof. And in *Dunn* v. *Bank*, 74 W. Va. 594, *supra*, it was held that the liability of a bank to a creditor *accrued* the instant the debt was contracted, thus construing the phrase in both the constitution and statute, *"for all its liabilities accruing,* while they are such stockholders." It was pointed out by JUDGE LYNCH in the opinion that the authorities varied in their views upon the proper construction of similar provisions, but that there was ample authority for the construction arrived at, citing many authorities. We are not disposed to reverse that decision. The statute of 1929 does not deal with the question under consideration, and in no way contravenes section 6, Article XI,

Constitution, or attempts to change or modify Code, chapter 54, sec. 78-a (3), or the decision construing the word "accruing" as found therein.

It is argued that to require the receiver or commissioner in a suit to enforce the double liability against a stockholder to show when the liabilities of the bank accrued for which the stockholder was liable personally to the extent of the par value of the stock then held by the latter, would greatly hamper and inconvenience the commissioner in the speedy settlement of the affairs of the bank, and delay the creditors in realization of their just debts, and entail costs. It must be remembered that the constitution protects the stockholder from responsibility for liabilities which did not accrue while he was a stockholder. As was said in the *Dunn* case: "That it may, under some circumstances and conditions operate oppressively, does not afford a sufficient reason for holding contrary to the manifest purpose and plain mandate of the sections cited." To allow a judgment to stand against a stockholder for double liability, not based on any evidence that he was owner of stock at the time the liability was incurred by the bank (for which only he is liable), would contravene the plain provision of the constitution cited. The burden rested upon the plaintiff to make out a case for recovery. It was error to instruct the jury to find for plaintiff. The assessment by the commissioner of the full double liability on the stockholders stock as of June 22, 1929, was not evidence that the liabilities of the bank which made it insolvent accrued as of that date.

The judgment will be reversed, the verdict set aside, and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*