CHARLES E. LAWHEAD, *Receiver, etc.* v. GEORGE W. DAVIS

(No. 7223)

Submitted March 2, 1932.  Decided March 22, 1932.

*Ernest D. Lewis,* for plaintiff in error.

*Steptoe & Johnson* and *James M. Guiher,* for defendant in error.

LITZ, JUDGE:

This action, in assumpsit, was brought by Charles E. Lawhead as receiver of Clarksburg Trust Company, a defunct

banking corporation, against George W. Davis to recover of him his constitutional liability as owner of 25 shares of the capital stock of the corporation. To a judgment of $2,500.00 in favor of the plaintiff, defendant prosecutes error.

Section 6, Article XI of the state constitution declares that stockholders of any bank shall be personally liable to the creditors thereof, over and above the amount of stock held by them, respectively, to an amount equal to their respective shares "for all its liabilities accruing while they are such stockholders." This constitutional provision is carried into legislative enactment as section 16, article 4, chapter 31, Code 1931.

Clarksburg Trust Company, since its incorporation in 1914, issued 3,000 shares of capital stock, which are now outstanding, of the par value of $100.00 each. Its indebtedness, at the time defendant purchased his stock, December 10, 1927, was $2,397,352.00, and on June 6, 1929, when the receiver took charge of its affairs, $2,084,643.00. It owes to its depositors more than $300,000.00 for deposits made by them during 1929. H. A. Abbott, commissioner of banking, called on the stockholders December 7, 1929, for payment of their constitutional liability. Defendant refused to respond, because a large part of the obligations of the bank had accrued prior to his ownership of stock, contending that an apportionment of the indebtedness among the present and former stockholders is prerequisite to the right of the receiver to enforce liability against any of them. Plaintiff answers that such procedure, if formerly required, has been obviated by chapter 31, article 8, section 32, Code 1931 (Acts 1929), the pertinent parts of which follow: "The receiver under the authority of the commissioner of banking shall institute and prosecute any suit or suits necessary to obtain possession of any property and to sell and dispose of the same and to collect all obligations due such institution or other corporation. The receiver in such suit, or by separate suits, under the authority of the commissioner of banking, shall enforce against the officers, directors and stockholders any liability incurred by them and existing in favor of the creditors of such institution or other corporation, and collect from such

officers, directors and stockholders any sums for which they are liable as aforesaid. If it shall appear that the assets of such insolvent institution or other corporation are not sufficient to pay in full all of its creditors and depositors, without waiting to administer the assets of such institution or other corporation, *or delaying for any other cause,* in the same suit or separate suits, to be forthwith instituted in the same or any other jurisdiction in his name, the receiver, under the authority of the commissioner of banking, shall collect from each of the several stockholders of such institution or other corporation all sums for which they are severally liable to such institution or other corporation, for the benefit of its creditors. * * * If the assets of any such institution or other corporation, including any sums collected from the officers and directors thereof, and all sums collected from the stockholders, shall more than suffice to pay all of the creditors of such institution or other corporation who have presented and proved, or caused to be allowed, their several demands, the surplus shall be disbursed as follows: First, in the case of a banking institution, to the stockholders who have paid in any sums upon their extraordinary liability as stockholders, pro rata up to the respective amounts paid by each of them. Second, if anything shall remain thereafter it shall be paid to the stockholders of the institution or other corporation, in proportion to the number of shares owned by them respectively.'' This statute was interpreted and applied in *Tabler* v. *Higginbotham,* 110 W. Va. 9, 156 S. E. 753, wherein it is held that the receiver of a bank, the insolvency of which has been determined by the commissioner of banking, may sue the stockholders thereof for their constitutional liability before the application of the assets to its debts. JUDGE LIVELY, speaking for the court in the opinion of the case says: ''The statute provides in terms that without waiting to administer the assets, or delaying for any other cause, the receiver shall collect from the several stockholders their liabilities in one suit or in separate suits. Then, if the assets, including all sums collected from the stockholders, shall more than suffice to pay the debts the surplus is to be distributed 'first to the stockholders who have paid any sums upon their

16

extraordinary liability as stockholders pro rata up to the respective amounts paid by each of them.' It follows that if the assets, other than the double liability sums collected, are sufficient to pay the debts, there could be little harm done to the stockholders by 'forthwith' payment of their statutory liability. The secondary character of the double liability remains. The other assets of the bank are first to be applied to the debts. The receiver holds the money contributed by the stockholders to supply any deficiency in order that the creditors may be protected. The fund is somewhat in the nature of a trust. The collection of this fund is not to await the administration of other assets; and delay in its collection is not countenanced 'for any other cause.' But it is argued that to forthwith collect this liability, and then return it or a part thereof would inflict an inconscionable hardship upon the stockholder. This same argument was advanced in *Studebaker* v. *Perry*, 184 U. S. 258, and was disposed of by Justice Shiras on page 262 as follows: 'In many instances, the value of the bank's assets might make it altogether probable that but a small portion of the stockholders' contribution would be needed. To require payment in full of money which might be held for years while the bank's affairs were being wound up, and then be returned without interest, would certainly be a hardship. If, to avoid that hardship, the comptroller should postpone the assessment until he could fully inform himself of the condition of the bank's affairs, in the time that might thus elapse, some of the stockholders might become insolvent or remove their property from reach of legal proceedings, and thus a loss be thrown upon the creditors.' The statute contemplates that more of the double liability might be collected than was necessary to discharge the debts, and it must be presumed that considerations of public welfare outweighed inconvenience and hardship which the stockholders might suffer. But it is not our province to find reasons for the act which is plain. The intention of a statute makes the law, and the cardinal rule in construing a statute is to find and give effect to that intention, even though it may not be in strict conformity with the letter of the law.''

As the statute authorizes enforcement of the liability against stockholders by the receiver, without waiting to administer the assets of the bank *or delaying for any other cause,* it follows that suit or suits for that purpose must precede an apportionment among the stockholders of the indebtedness.

The further contention of defendant, that such suit or suits should be brought in equity, is without merit, as the statute not only directs the receiver to collect the stockholders' liability before administering the assets, but plainly and necessarily contemplates employment by him to that end of expeditious procedure.

The judgment of the circuit court is affirmed.

*Affirmed.*