JOHN H. HOFFMAN, *Receiver, etc. v.* JOSEPH W. UNGER *et al.*

(No. 9433)

Submitted February 2, 1943. Decided March 23, 1943.

J. O. Henson, for appellants.

H. D. Allen, for appellee.

Chas. G. Peters and Mohler, Peters & Snyder, for Metropolitan Life Insurance Co., amicus curiae.

Robinson & Stump and John S. Stump, Jr., for John H. Hoffman, Receiver for the Circleville Bank, a corporation, amicus curiae.

Harvey W. Harmer, Stathers, Stathers & Cantrall and Mary Frances Brown, for certain stockholders of Farmers Bank of Clarksburg, West Virginia, amici curiae.

RILEY, PRESIDENT:

John H. Hoffman, as receiver of the Bank of Morgan County, an insolvent state banking corporation of the State of West Virginia, instituted in the circuit court of said county a suit pursuant to Code, 31-8-32, for the purpose of liquidating said bank. Joseph W. Unger and A. R. Dawson, stockholders who have paid in full their statutory liability as stockholders, appeal from the decree of the Circuit Court of Morgan County, which provided that $3,639.18, being the balance remaining after the payment of the principal indebtedness of the bank and costs and expenses of receivership, should be distributed by the receiver "to the depositors on claims proven in said bank".

Thus the sole question presented on this appeal is whether the balance remaining in the hands of the receiver of an insolvent bank after the payment of the principal indebtedness of the bank and all costs and expenses of the receivership, shall be distributed by the receiver to the depositors who have proved their claims, or to the stockholders who have paid all or part of their stockholders' liability.

The Bank of Morgan County was declared to be an insolvent institution by the Commissioner of Banking on October 3, 1931, and a receiver therefor was appointed. The outstanding capital stock of the bank consisted of two hundred and fifty shares of stock of the par value of one hundred dollars each. At the time of the closing of said

bank for liquidation A. R. Dawson was the owner and holder of eight shares and Joseph W. Unger, the owner and holder of five shares. The bill alleges that "the former receivers of the bank * * * have heretofore collected by suits and otherwise the statutory liability of the stockholders of said bank from whom collections could be made", and the decree complained of, as above noted, relates that Unger and Dawson "have paid their statutory liability in full". According to the bill all of the depositors of the bank have been paid "the principal of their respective deposits in full, but have been paid no interest thereon since the closing of said bank for liquidation".

At the outset it is appropriate to note the assessment of double liability which appellants, Dawson and Unger, paid was pursuant to a requirement of the Constitution of West Virginia, Article XI, Section 6, and Code, 31-4-16, to the effect that stockholders of any bank authorized by the laws of this State shall be personally liable to the creditors thereof over and above the amount of stock held by them respectively to an amount equal to their respective shares so held, for all liabilities of the bank "accruing while they are stockholders * * *". Where it appears that the assets of an insolvent bank are insufficient to pay in full all of its creditors and depositors, payment of such double liability, without awaiting the administration of such bank's assets, is a requirement of Code, 31-8-32. See *Bank of Marlinton* v. *King,* 116 W. Va. 259, 180 S. E. 92; *Lawhead* v. *Davis,* 112 W. Va. 13, 163 S. E. 629; *Tabler* v. *Higginbotham,* 110 W. Va. 9, 156 S. E. 751. The statute last cited likewise provides that:

"If the assets of any such institution or other corporation, including any sums collected from the stockholders, shall more than suffice to pay all of the creditors of such institution or other corporation who have presented and proved, or caused to be allowed, their several demands, the surplus shall be disbursed as follows: First, in the case of a banking institution, to the stockholders,

who have paid in any sums upon their extraordinary liability as stockholders, pro rata up to the respective amounts paid by each of them. Second, if anything shall remain thereafter it shall be paid to the stockholders of the institution or other corporation, in proportion to the number of shares owned by them respectively."

The rule that the appointment of a receiver of a closed bank by the banking commissioner will not destroy its corporate entity and its directors are not removed from office thereby, was pronounced in *Gall, Receiver* v. *Cowell*, 118 W. Va. 263, 190 S. E. 130. We think it follows that in the instant case the appointment of a receiver did not *eo instante* effect a cessation of the stockholders' liability. The statute itself provides for the payment of costs and expenses of the receivership out of the assets of a closed banking institution; and while this Court has held that the liability of a stockholder of a defunct bank for a double assessment is secondary in character (see *Tabler* v. *Higginbotham, supra; Pyles* v. *Carney,* 83 W. Va. 159, 101 S. E. 174, 175; *Finnell* v. *Bane,* 93 W. Va. 697, 117 S. E. 549;) we think that the evident purposes for which the statute was enacted are indicative that the Legislature intended that whatever assets there were belonging to a bank at the time of its closing, plus the aggregate sums collected by the receiver as double liability assessments, should constitute the fund out of which the receiver would pay the depositors and creditors of the defunct institution. In *Tabler* v. *Higginbotham, supra,* the following language of the Court reflects such a conclusion: "It follows that if the assets, other than the double liability sums collected, are sufficient to pay the debts there could be little harm done to the stockholders by 'forthwith' payment of their statutory liability. * * * The other assets of the bank are first to be applied to the debts."

Our next inquiry, therefore, is what are the debts of the defunct institution? Does the term include interest?

Courts and text writers alike state that, as a general

rule, interest on a claim against an insolvent bank is calculated only to the date of suspension of the bank and a receiver's taking charge of its assets, unless there are surplus assets after paying in full the claims of depositors and creditors. Michie, Banks and Banking, Vol. 3, Section 219; Clark on Receivers, 2nd Ed., Section 660; Graver, Liquidation of Financial Institutions, Section 811; Fletcher Cyc. Corporations (Permanent Ed.), Vol. 16, 1942, Revised Vol. Section 7937; 7 Am. Jur., Subject Banks Section 744; *Reichert v. Metropolitan Trust Co.*, 293 Mich. 76, 291 N. W. 228; *People ex rel. Barrett v. The Farmers State Bank of Irvington*, 371 Ill. 222, 20 N. E. 2d 502; *Gormley v. Eison*, 189 Ga. 259, 5 S. E. 2d 642, 643. The Georgia court, in *Gormley v. Eison, supra*, expressly declared that the general rule was applicable "on all claims, whether they are interest-bearing or not", while in *Greva v. Rainey*, 2 Cal. 2d 338, 41 P. 2d 328, the Supreme Court of California observed that:

> "Those cases declared that the statement that interest will not be computed from the date of insolvency became the general rule, not because the claims were considered to have lost their interest-bearing quality, but because in the great majority of cases the assets were insufficient to pay both the principal and the interest which would otherwise become due."

It is stated in Zollman, Banks & Banking, Section 1781, that "where a bank is so badly insolvent that the entire superadded liability of the stockholders when collected is insufficient to pay the principal of its debts, no question can arise whether its creditors are to receive interest, any computation of such interest would be a useless effort".

It was decided in this jurisdiction in an early case *(Parkersburg National Bank v. Als*, 5 W. Va. 50), that a "bank is not chargeable with interest on sums deposited to the credit of customers to be drawn against by check, until payment be demanded, unless upon special contract". In the instant case demand for payment would have been

a useless gesture on the part of depositors for the appointment of the receiver presupposed the lack of sufficient funds to pay in full all creditors of the bank. "The insolvency of the bank, or a suspension of payment, dispenses with the necessity of demand, and all deposits become due and payable forthwith". Michie, Banks and Banking, Vol. 5, pp. 684; Zollman, Banks & Banking, Permanent Ed., Vol. 5, Section 3429.

It does not appear affirmatively here that the existing surplus arises solely through payment of the double assessments. May then interest be paid to depositors out of such surplus? An affirmative answer finds ample and sound precedent. *Richmond* v. *Irons*, 121 U. S. 27, 7 S. Ct. 788, 805, 30 L. ed. 864 (1887) is a leading case, but the critique thereof by appellants' counsel is that the problem therein considered and determined arose under the National Banking Act under which "the liability of the shareholder is for contracts, debts and engagements of the bank * * * : of course, not in excess of the maximum liability as fixed by the statute". However, in *People ex rel. Barrett* v. *Farmers State Bank of Irvington, supra,* the Supreme Court of Illinois was confronted with a construction of Article XI, Section 6, Constitution of Illinois because of the claim of stockholders that the trial court had erred in directing a liquidating receiver to pay interest from the date of his appointment on all adjudicated claims. That section of the Illinois Constitution reads:

> "Every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors, over and above the amount of stock by him or her held, to an amount equal to his or her liabilities accruing while he or she remains such stockholder."

According to the decision of the majority of the court "in contemplation of law the claims against the bank were interest-bearing at all times, and payment of interest depended only upon there being a surplus". It predicated its conclusion upon the postulate that "Equity allows or

withholds interest in accordance with what is equitable and just in view of all the circumstances in the case". See also *Reichert* v. *Metropolitan Trust Co., supra,* which adopted the equitable principle as "the most compelling reason" assigned for allowance of interest to depositors, but it is noted that no double liability was involved. The dissenting opinion in the *Barrett* case argues that a defunct bank in the hands of a receiver "can make no contracts and incur no liabilities for which it or its stockholders may be held responsible". The rationale of the dissent is expressed in the following language:

> "The rights and liabilities of creditors and debtors of an insolvent corporation are fixed and determined as of the time of the appointment of a receiver * * *. Whatever charges and expenses are incurred after that time are not obligations of the bank but are debts of the receivership".

The reasoning employed in the dissenting opinion is, according to our view, not sound, for, as we have noted above, the appointment of a receiver does not destroy the corporate entity nor the status of the stockholders as such, and the item of interest which accrues during the receivership is not a liability which the statutory receiver creates but arises by virtue of the relationship existent when the receivership is effected. In *Stein* v. *Delano,* 121 F. 2d 975, (C. C. A. 3), involving a national bank, stockholders contended that their responsibility was limited by the statutory language "contracts, debts and engagements", and thus excluded the item of interest. In denial of this contention, the Circuit Court of Appeals declared that "To so interpret the statute would be to interpolate the words 'principal amount of' before 'debt'. The authorities are unanimous in their rejection of any such view." We think such denial is applicable whether the item of interest is incident to a special contract or deposit or to an ordinary bank deposit.

We have concluded that interest upon deposits is a part of the liabilities for which the double liability assessment

of a stockholder of a closed bank must stand responsible because of principles of law, but equity, too, requires it, for it is not a sufficient answer to say that because a depositor has recovered the principal of his deposit, he may not seek interest because the occasioned delay is the act of the law. To deny depositors the surplus because of the law's delay is to impose upon them the responsibility both of the institution's faulty financial condition and the insolvency itself. Moreover, unlike the stockholder, a depositor has no means of ascertaining the financial status of a banking institution whose invitation for deposits should be an avowal of solvency. See *Bates, Supt. of Banking* v. *Farmers Saving Bank, etc.,* 231 Iowa 1151, 3 N. W. 2d 517, where assignment of despositor's claim to Federal Deposit Insurance Corporation was held to include interest from the date of insolvency to date of payment.

One contention argued against the payment of interest to the depositors is that since it is asserted that the principal of the various claims has been paid and accepted, the right of depositors to interest may not now be asserted. In support thereof, we are directed to *Bennett* v. *Coal & Coke Co.,* 70 W. Va. 456, 74 S. E. 418, 40 L. R. A. (N. S.) 588, Ann. Cas. 1913 E, 578, wherein it was held (pt. 4, syl.) as follows:

> "But where the contract does not so specifically provide for payment of interest, but the right thereto is by an implication, interest is considered as damages, and not as forming the basis of the action, and is recoverable only along with the principal sum and as an incident thereto, and if the principal sum be accepted in settlement the right to damages is lost and no separate subsequent action can be maintained therefor."

The distinguishing factor between that case and the instant one is that in the latter the creditor has no choice in the matter of acceptance. He has no option of compromise as was true in the *Bennett* case.

> "Even if it be conceded that the dividends are principal it should not follow that the obligation

for interest is thereby extinguished. The ration- · ale of the general rule in this regard is that when the creditor *voluntarily* accepts the principal as such, he ought to be regarded as having waived the interest. In the insolvency cases there is no voluntary acceptance of principal, because the creditor is precluded from rejecting the dividends and demanding payment of principal and interest in full."

Article, "Effect of Insolvency Proceedings on Creditor's Right to Interest", Hanson, 32 Michigan Law Review 1069, 1085. We do not agree with counsel that this result is an extension of the rule in the *Bennett* case. That case dealt with an agreement of settlement between two parties dealing at arm's length where the creditor voluntarily accepted the principal which was a smaller amount than he claimed. The situation here is factually dissimilar.· A depositor of a closed bank does not necessarily regard the dividends he receives as payment on principal. Until the assets are administered, he knows not what his rights are as to interest. We may not say that the receiver's allegation in the bill of complaint, that principal has been paid in full, charges a depositor with acceptance of dividends, aggregating the principal sum of his indebtedness, as an agreement that such amount is a settlement of his claim in full in the absence of an actual and existing agreement to that effect.

For the reasons assigned the decree complained of is affirmed.

*Affirmed.*

Rose, Judge, concurring:

The plaintiff, in his bill of complaint clearly and unequivocally alleges that "all of said depositors have been paid the *principal* of their respective deposits in full but have been paid no *interest* thereon." (Italics supplied.) No pleading or evidence in the case in any degree contradicts this statement. The court clearly accepted and acted

upon it, since the final decree provides that the receiver "do pay said sum of $3,639.18, or a dividend of 2.2% *interest* to the depositors on claims proven in said bank". (Italics supplied.) It is, therefore, absolutely clear that the principals of all deposits were found by the court to have been paid in full and that the decree gives these depositors by this suit, interest only. This, I understand, cannot be done except where there was an express agreement to pay interest on the debt.

The rule of law applicable to these facts seems to be undisputed. Where interest is recoverable, not by virtue of an agreement therefor, but wholly as damages for the retention of the principal debt, acceptance of the payment of the principal in full, makes recovery of interest thereafter impossible. Interest in such a case is regarded legally as a mere incident to the principal and when there remains no principal or part of the principal to be recovered there is nothing to which the interest can be incident. This principle is expressly accepted in *Bennett* v. *Federal Coal & Coke Co.,* 70 W. Va. 456, 74 S. E. 418, 419, 40 L. R. A. (N. S.) 588, Ann. Cas. 1913 E. 578. Judge Miller, speaking for the court, said: "For the proposition that interest on an implied contract is a mere incident to the debt, and that after payment of the principal interest cannot be recovered by separate action, defendants counsel rely upon the following authorities: *Brewster* v. *Wakefield,* 1 Minn. 352, 1 Gill. 260, 69 Am. Dec. 343; *Graves* v. *County,* 104 Fed. Rep. 61; *Southern Ry. Co.* v. *Dunlop Mills,* 76 Fed. Rep. 505; *Smith* v. *Buffalo,* 39 N. Y. Suppl. 881; *Fake* v. *Eddy,* 15 Wend. (N. Y) 76; *Stewart* v. *Barnes,* 153 U. S. 456, 14 S. Ct. 849, 38 L. Ed. 781, and the leading case of *Moore* v. *Fuller,* 47 N. C. 205, 2 Jones (Law) 205, a North Carolina case, and 22 Cyc. 1572, 1573. These authorities fully support the proposition contended for." Judge Miller further quotes with express approval the language of Mr. Justice Shiras, in *Stewart* v. *Barnes,* 153 U. S. 456, 14 S. Ct. 849, 38 L. Ed. 781, as follows: "Interest in such cases is considered as damages, and does not form the basis of the ac-

tion, but is an incident to the recovery of the principal debt. The right of action is the right to compel the payment of the money which is being retained. When he who has this right commences an action for its enforcement, he at the same time acquires a subordinate right, incident to the relief which he may obtain, to demand and receive interest. If, however, the principal sum has been paid, so that, as to it, an action brought cannot be maintained, the opportunity to acquire a right to damages is lost." This principle seems to be accepted by the courts generally. In addition to the authorities cited by Judge Miller, see: *Hopkins* v. *Erskine,* 118 Me. 276, 107 A. 829; *Yazoo & M. V. R. Co.* v. *W. C. Craig & Co.,* 111 Miss. 297, 71 So. 561; *Alabama City, etc. Ry. Co.* v. *City of Gadsden,* 185 Ala. 263, 64 So. 91, Ann. Cas. 1916 C, 573; *Arnold* v. *Sedalia National Bank,* 100 Mo. App. 474, 74 S. W. 1038; *Gordon* v. *City of Omaha,* 71 Neb. 570, 99 N. W. 242; *Maloy* v. *Board of Commissioners,* 10 N. M. 638, 62 P. 1106, 52 L. R. A. 126; *Brady* v. *Mayor etc., City of New York,* 14 App. Div. 152, 43 N. Y. S. 452; *Union Trust Company of Rochester* v. *Kaplan,* 249 App. Div. 280, 292 N. Y. S. 152; *Moran Towing & Transportation Co.* v. *Fleming,* 23 N. Y. S. 2d 750, 175 Misc. 408; *Fender* v. *Waller,* 139 Neb. 612, 298 N. W. 349; *Merrigan* v. *Metropolitan Life Ins. Co.,* 43 F. Supp. 209.

It is true that in the *Bennett* case there is also the element of a settlement which barred recovery. But the decision did not pretend to narrow the rule to cases where a settlement was present. From the opinion it clearly appears that either the settlement or the payment of the principal in full was regarded as sufficient to bar recovery of the interest sued for.

This rule of law would of itself require a reversal of the decree appealed from were it not that I think we may take judicial notice of the fact that banks in general have some deposits, which by special agreement do bear interest. We may, therefore, assume in the absence of any showing to the contrary, that such was true in the Bank of Morgan County. Hence, the balance now in the receiver's hands

should have been applied to the discharge of the contract interest (not legal interest) on time deposits and savings accounts. As this balance is small, it would in all probability be exhausted by these payments, so that we cannot see that the stockholders would receive any part thereof. The only persons who would benefit by a reversal are the depositors whose deposits bear interest by contract, and they are not complaining. I, therefore, also, would affirm.

These views are to be understood as applying only to cases where the payment in full has been actually applied to the principal. If the payments are general and to be applied to the debt as a whole a different conclusion would probably be necessary although it might be difficult to explain how a series of many payments in odd dollars and cents which aggregate the exact amount of the principal, could be considered as other than the payment of the principal itself.